MONTELIUS & FULLER vs. SARPY, Adm'r of Chouteau.

1. The publication of the notice of the grant of letters of administration need not be completed within thirty days from the grant of letters; it need only be begun in that time.

2. The limitation of three years for the presentation of demands against the estate of deceased persons, applies to suits in all other courts, as well as to those before the County Court.

ERROR to St. Louis Court of Common Pleas.

*Statement of the Case.*

The declaration alleged in the first count a promissory note made by Chouteau on the 26th March, 1835, for $1706 25, payable six months after its date to the plaintiffs, which was dated at Philadelphia. The *second* count was for merchandize sold and delivered, work and labor done, money lent and advanced, by plaintiffs to Chouteau in his lifetime, &c., and an assumpsit by him to pay therefor. The fourth and fifth counts were on promises by the administrator, and the third count was on an account stated with Chouteau in his lifetime. The defendant pleaded the general issue to all the counts; also, to the first count, the statute of limitations of ten years; and to the

2nd, 3rd, 4th and 5th counts, the limitation of five years.   He then pleaded to the whole declaration, that after said causes of action accrued, to-wit, on the —— day of December, A. D. 1838, said Chouteau died intestate, and that on the 19th day of January, in the year 1839, letters of administration on his estate were granted in St. Louis county, Missouri, to said Sarpy, the defendant, by the Clerk of the County Court of St. Louis county; and, "that afterwards, and within thirty days after the granting of said letters, the said Sarpy published in a newspaper in this State for three weeks a notice that letters of administration on said estate had been granted to him as aforesaid—stating the date, and requiring all persons having claims against the estate to exhibit them for allowance," &c.; and that the said plaintiffs did *not, within* said three years from and after the date of the letters of administration, exhibit any claim against said estate, &c.   The same plea was also pleaded separately to the several counts.   These pleas (setting up limitation of three years) are the 6th, 7th and 8th, as numbered on the record.   Replications were filed to them setting forth the notice given by the administrator, *in haec verba,* as follows:

"*Administrator's Notice.*—The undersigned has obtained from the Clerk of the County Court of St. Louis county letters of administration on the estate of Auguste Chouteau, deceased, bearing date the 19th day of January, 1839.   All persons having claims against said estate are hereby required to exhibit them for allowance within one year from the date of said letters, or they may be precluded from any benefit of said estate; and if not exhibited within three years from the date of the letters, they shall be forever barred.   Feb. 8.          John B. Sarpy, Administrator."

The replications then alleged that this notice was printed for the first time on the 8th Feb., 1839, and then again on the ninth day of the same month, correcting a mistake in the name; and that the publication was continued in the same words for three weeks thereafter in the Missouri Republican, a paper published in the State of Missouri, and that it was the only notice ever published of the grant of letters, &c.

A general demurrer was filed by the defendant to these replications.

The only questions of law arising in this case are upon the demurrer to said replications, and are whether the three years limitation is a bar to this action, and whether the notice of administration, as published, is sufficient.

### Spalding & Tiffany, *for Plaintiffs in error.*

This was assumpsit by Montelius and Fuller against Chouteau's administrator, terminating by demurrer to replications, which were sustained, *presenting two questions only: First,* whether the notice of administration had been correctly published by administrator.   Rev. Code of 1835, p. 47, sec. 19; 9 Mo. R., 262; that publication of notice right, is necessary to the bar.   *Second,* and whether, if such notice was legally published, the three years limitation prescribed in the act "respecting executors and administrators" is a bar to to the present action.   The negative is held by the plaintiffs in error.   Rev. Code of 1835, p. 55, sec. 1, 2, 3 and 6, through that article.   •

From these provisions, it appears that a judgment in the Circuit Court or other court of record has to be presented to the probate court in order to be available against the estate of a deceased person; and then the claim on which it was rendered must have been *lawfully exhibited* to the administrator within three years, or it cannot be classified or paid.   Rev. Code of 1835, p. 57, sec. 19.   *Third.* The plaintiff in error maintains that the *limitation of three years is to be confined to the courts having probate jurisdiction.*   That this is the construction of the statute, see act of 1835 on executors and administrators, and also the general act on the limitation of suits in the Code of 1835

The limitation of three years is in a *special* statute, the perview of which is a single subject to all dead men's estates, to be regulated and managed by a particular tribunal.   It is not contained in the general act of limitations, which applies generally to all causes of actions and to all courts.

It is intended, like most of the provisions of the administration act, as the regulation of the *conduct* and *closing* of *estates,* that is, of the *property and effects of deceased persons.*

It is not intended as a rule to govern other courts; in its terms, it does not embrace them; the place where it is found does not indicate that the Legislature had them in mind; and I contend that policy does not require such a construction as to make this limitation reach them. 6 Bac. A., 388. "A statute which is to take away a remedy at common law, ought never to have an equitable construction;" nor when it will overthrow an estate. Statutes should not be so construed as to invade individual rights. Ibid, 391; and 2 Mass. R., 146.

Rev. Code of 1835, sec. 10, p. 396, refers to suits limited by other acts, and says they are not included in the limitation act; which other acts, or some of them, are: p. 74, sec. 2; p. 116, sec. 4; p. 45, sec. 36.

In the administration act, when other courts or suits are intended, they are indicated by apt words; p. 62, sec. 8; p. 55, sec. 3 and 4; p. 56, sec. 37.

And in Probate Courts, proceedings and entries are not called actions and judgments, &c.; p. 56, sec. 8, 9, 10; p. 57, sec. 18, 19 and 20; p. 63, sec. 1 and 6. Compare with last page cited, p. 470, sec. 7.

This limitation of three years cannot be construed to defeat the creditor's remedy against the *heirs* or against a fund not belonging to the estate; it is merely for the protection of the *estate*—the funds left by the deceased in the hands of the administrator.

*Fourth.* This point is not settled by the decisions of the Supreme Court of this State. 1 Mo. R., 554, (772) Labeaume vs. Hempstead, was a case originating in the Probate Court, and defendant pleaded limitation of *five years for exhibition of claims,* in bar, and replication set up the *general limitation* as enlarging the time. Court decided the *general limitation* did not effect the case, but that it was governed by the special limitation governing the Probate Court in administration of estates. 8 Mo. R. 169, Miller vs. Woodward, et al., adm'r of Mauzy. This establishes the rule that the three years limitation of the administration act was no bar to a creditor whose cause of action did not accrue till the *three* years had expired, whether suing in the County Court or chancery. The court here expressly applies this limitation to the tribunal having probate jurisdiction; and it is well known that courts of chancery conform to the legal limitations, and would, while seeking to recover a demand from *an estate, the funds left by the deceased,* would conform to the limitation prescribed to the courts, in lieu of which it was acting. 9 Mo. Rep., 227, Finney, adm'r of McCallister, vs. State. This was a suit on a guardian's bond against Finney, adm'r.— Plea, *demand* not exhibited for allowance within three years after grant of letters. On demurrer, the court decided the case *entirely* on the ground that the cause of action did not accrue till after said three years expired, as was held in foregoing case. Not a word is said on the question arising in the present case, nor was it necessary. 9 Mo. R., 262, Wiggins vs. Lovering's adm'r.— This was in the County Court, and does not touch the present question.

*Fifth.* If it be asked, what use in permitting a judgment to be rendered against administrators, which cannot be classified, and cannot therefore in any manner affect the estate of the deceased? —the answer is, *that a judgment which cannot be available against the estate of a deceased person because barred from not having been presented in time, may yet, on well known principles of law, be made available to a creditor against property which does not belong to the estate.* 2 J. C. R., 283; 4 J. C. R., 671, 687; 5 J. C. R., 280; 1 Paige, 168; 20 J. R., 554.

*Sixth.* If the three years be a bar *in all courts* to the demand, then it would bar a suit against the *heirs* also. Rev. Code of 1835, p. 253, sec. 4 and 6.

## GAMBLE & BATES, *for Defendant in error.*

The demurrers to the replications to the sixth, seventh and eighth pleas were correctly sustained, because—

1. It was not required that the notice of the grant of letters of administration should be published for three weeks, so the whole publication should be within thirty days from the grant of

*Montelius & Fuller* vs. *Sarpy, adm'r of Chouteau.*

letters. The replication admits the publication for three weeks, and that it commenced within thirty days after the grant of letters, but intends to deny that the publication was completed within that period. Rev. Code of 1835, art. 2 adm'r law, sec. 19. When we examine the Revised Code of 1825, page 101, sec. 25, we find the same identical provision, and we insist that the provision, although passing through different revisions of our statute laws, is to receive the same construction as if we were now construing the act of 1825.

It is impossible to believe, from the known state of the country and the public press in 1825, that the clause then could have required the publication to be completed within thirty days from the grant of letters.

2. It is insisted that the replication admits that the publication may have been completed within the thirty days from the letters granted. It admits the publication on the 9th of February, and says it was published for three weeks from that day. It states that the letters were granted on the 19th January.

Now, beginning the publication on the 9th February, there was sufficient time for the three weeks publication before the 18th day of February. 4 Pet. R.

3. It is insisted that the limitation the administration law applies to the demand of the plaintiff as well when the establishment of the demand is sought by the judgment of the Circuit Court as when it is attempted in the Probate or County Court. Art. 4 of the administration act of 1835, secs. 1, 2, 7, 10, 18, 19.

The scope of the whole administration law contemplates the entire settlement of estates and the distribution of the assets among the representatives of the deceased, as against all demands of creditors, so that all should be settled up.

NAPTON, J., *delivered the opinion of the Court.*

The first point of law presented by the demurrers is, whether the publication of notice of the grant of letters which the act concerning administration directs, must be completed, as well as commenced, within thirty days from their date. The affirmative of this proposition is maintained by the plaintiff in error, and the argument in support of it is based altogether upon a *literal* construction of the act. We are not disposed to adopt this construction, because its language does not require it, and because such a construction of this law, at the date of its original enactment, would have rendered it impracticable, and is not at this time necessary to carry out the designs of the Legislature. There is no connection in our administration law, as there is in some of the other States, between the running of the statute of limitation and the time when the public notice is required to be given by the administrator. The statute runs from the date of the letters, and has no reference to the period when the publication is commenced or completed. It was only necessary to attain the purposes which the law contemplated, that a reasonable period should be prescribed within which the publication should be commenced. In 1825, when this administration law was first passed, with a provision exactly similar to the one now under consideration, the construction now

*Montelius & Fuller* vs. *Sarpy, adm'r of Chouteau.*

contended for would have been inconvenient, if not entirely impracticable. At that period, there was, I believe, but a single newspaper printed in what was then known as the "Boon's Lick Country," and that was a weekly periodical. If the three weeks notice was necessary to be completed within the thirty days, only nine days would be allowed the administrator in which to procure the first publication. Where he resided on the frontier, three or four days would be requisite to enable him to reach the office of publication, (which was in Howard county) and if he happened to arrive on the day of publication, but after the paper had been struck off, or the one succeeding it, he could not comply with the law. This, too, would be making no allowance for casualties, and it is quite apparent that, in nine cases out of ten, the law so construed, could not be complied with. This provision, therefore, could not have received.this construction *practically* in 1825, or for several years thereafter, and as the law now remains precisely as it was then, a different construction cannot prevail, although the situation of the country now would render such construction practicable.

The second position of the plaintiff in error is, that the special limitation of the administration act is subservient to the general statute of limitations; that the former is confined entirely to proceedings in courts of probate, and consequently is no bar to the present action. The words of the act are, that "all *demands* not thus exhibited, shall be forever barred." It is provided in the same article, that the administrator may be sued either in the Circuit or County Court, and a proceeding in the former court is declared to be a *demand* from the time process is served. The language of the act is therefore against the construction now contended for. Is there any thing in its general scope or in the general requirements of justice which calls for such a construction?

It is admitted, that after the lapse of three years, a suit against the administrator, either in the Circuit Court or Probate Court, could not be made available against the estate of the deceased. But, to explain the necessity for the distinction urged, it is said that the judgment sought in the Circuit Court, although it could never be presented as a claim against the estate of Chouteau, might be made the foundation of a collateral proceeding against persons who have become Chouteau's voluntary or fraudulent alienees in his lifetime. This explanation certainly establishes, that the plaintiff may be benefitted by the construction he contends for, but is not, I think, a sufficient reason for its adoption. If a party, by his *laches*, loses his right to a judgment, he necessarily loses all contingent or collateral benefits which he might have derived from such judgment.

16

And the question at last returns, is the statute a bar to the action? The *object* which the plaintiff may have in view when he institutes a suit, is of no consequence. If a bar to his recovery is presented, he cannot remove it by disclaiming any wish to use the desired judgment against the defendant. The construction of the statute of limitations must be uniform; the statute cannot be enforced or waived, according to the purposes of the suitor.

Our construction of the administration law is, that the limitation therein provided for entirely supercedes the general statute on that subject; that when a man dies, there is no mode of proceeding against his personal representatives, except those pointed out in that act, and that those proceedings, in whatever court they may be instituted, must be governed by the provisions of the administration law, and subject to its limitations and restrictions. As the act concerning administration recognizes a suit in the Circuit Court as one of the modes of proceeding against an administrator, and at the same time declares that *all demands* against him or against the estate, which are not prosecuted within three years from the date of the letters, shall be forever barred, the limitation must apply to both classes of suits. If any distinction had been designed, it would have been expressed. Indeed, the plaintiff's argument seems to admit this construction of the statute. It is admitted that all remedy against the estate of the deceased is gone; but it is argued that this is the sole object of the statute, and that this object will be as well affected by confining the limitation to suits in the Court of Probate, in which all demands against the estate must ultimately be allowed. The distinction, then, rests entirely upon the assumption that a creditor may have a cause of action against his debtor or against his debtor's estate, the remedy upon which, either against himself or his estate, as the case may be, is entirely extinguished, and yet enforce the same cause of action against some third person. Whether this can be done or not, depends upon another question, and that is, whether his right to enforce his cause of action against such third person be independent of the enforcement of his remedy against the original debtor, or be dependent upon it. If the latter, the collateral action is as completely barred as the original suit. If Chouteau were now alive, and the plaintiff's cause of action was barred by the general statute, could he enforce a covenant in a collateral suit in which the condition precedent was the recovery against Chouteau? Certainly not. And the case is not altered by Chouteau's death, except that the special limitation is shorter than the general limitation law.

The other Judges concurring, the judgment is affirmed.