Blanche Mae CLARKE, Guardian of the Estate of Larry Ray Coulter, Janis Kay Coulter and Susan Mae Coulter, Minors, Appellant,

v.

Hazel Delores ORGAN, Administratrix of the Estate of William Dee Organ, Deceased, Respondent.

No. 46731.

Supreme Court of Missouri,

En Banc.

Nov. 9, 1959.

Motion for Rehearing Stricken Dec. 14, 1959.

Robert G. Oberlander, Kuraner, Freeman, Kuraner & Oberlander, and Walter A. Raymond, Kansas City, for appellant.

Deacy & Deacy, Thos. E. Deacy, Edward W. Mullen, Kansas City, for respondent.

James W. Benjamin, Rogers, Field, Gentry & Jackson, Kansas City, amici curiae.

Harry P. Thomson, Jr., and John R. Caslavka, Kansas City, amici curiae, Shughart & Thomson, Kansas City, of counsel.

EAGER, Judge.

This is a suit for the wrongful deaths of both parents of the plaintiff's minor wards; those deaths occurred as the result of the collision of the parents' motorcycle with a car driven by William Dee Organ, whose administratrix is the defendant here. All three persons died on Sept. 1, 1956, the date of the collision. Plaintiff is the guardian of the three minor children. Defendant was appointed administratrix of Organ's estate on Oct. 8, 1956, and the first publication of the Notice of Letters was made on Oct. 11, 1956. This suit was instituted on Nov. 10, 1956, seeking damages of $50,000 for the death of both parents, and asserting that the deaths were caused by the negligence of decedent Organ. Service of process was had on the defendant on Nov. 23, 1956. On Jan. 5, 1957, defendant filed answer, admitting the appoint-

ments of the Guardian and the Administratrix, denying all substantive allegations, and pleading negligence on the part of the minors' parents. On Oct. 16, 1957, defendant filed a motion to dismiss the petition for failure to comply with the provisions of the Probate Code (sections 473.-360, 473.363 and 473.367, Mo.Cum.Supp. 1957, V.A.M.S.) by filing copies of the summons and return in the probate court within nine months after the first publication of the Notice of Letters. Copies of the petition, summons and return were filed in the Probate Court of Jackson County on Nov. 18, 1957, more than 13 months after the first publication of Notice of Letters. The motion to dismiss was sustained after the introduction of evidence of a formal nature showing the facts of record in the Probate Court, largely as already stated. Thereafter, and on motion, the court set aside that order to permit further evidence, but again dismissed the petition on Dec. 26, 1957. This appeal followed that order. That evidence consisted of further probate files and records and the testimony of counsel for defendant (elicited over objections) that an insurance company was interested in the defense. No further facts whatever were developed as to the insurance. The inventory of the estate listed personal property valued at $125; no claims had been filed against the estate; the public administrator had filed a petition for the issuance of letters, but the letters were issued to a sister, the defendant here. The attorneys who defend this case are also the attorneys for the estate. It is clear that neither a notice of the institution of this suit nor copies of the summons and return were filed in the Probate Court within nine months of the first publication. All statutory references herein are to the Mo.Cum.Supp.1957, unless otherwise stated.

The only question involved is the correctness of the dismissal, which was based upon the failure to file notice of the institution of the suit (section 473.360, subd. 2) or copies of the process and return of service (section 473.367) in the Probate Court within nine months after the first publication. We need not concern ourselves with any possible distinctions between these two requirements, for plaintiff filed neither. We first note the statutes involved; all emphasis used is ours. Section 473.367 provides that any action commenced against an executor or administrator "is considered a claim duly filed against the estate from the time of serving the original process on the executor or administrator *and the filing of a copy of the process and return of service thereof in the probate court.*" Section 473.360 provides that all claims (with exceptions not important here) " * * * whether due [or] [1] to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, which are not filed in the probate court within nine months after the first published notice of letters * * * are forever barred against the estate, the executor or administrator, the heirs, devisees and legatees. * * * " Paragraph 2 of the last mentioned section expressly provides that *"All actions against the estate of a deceased person, pending or filed under sections 473.363 or 473.367, shall abate or shall be barred unless notice of the revival or institution thereof is filed in the probate court within nine months after the first published notice of letters."* Section 473.367 has already been digested, supra; section 473.363 provides that a pending action becomes a claim against a decedent's estate when it is revived *"and notice of the revival is filed in the probate court."* Section 473.360, subd. 4 is as follows: "Nothing in this section affects or prevents any action or proceeding to enforce any mortgage, pledge or other lien upon property of the estate, except that attachment, judgment and execution liens shall be enforced as provided in this law and not otherwise." Section 473.370 is as

---

1. The omission of the "or" appears to be a misprint. Compare Laws 1955, p. 434; Laws 1957, p. 847.

follows: "Establishment of claim by judgment—judgment deemed filed, when.—1. A person having a claim against an estate may establish the same by the judgment or decree of some court of record other than a magistrate court, in the ordinary course of proceeding, upon filing a copy of the judgment or decree in the probate court. Copies of unsatisfied judgments or decrees of any court rendered in the lifetime of the decedent shall also be filed in the probate court.

"2. *Except where notice of revival of an action or of institution of an action is filed as required by section 473.363 or 473.367,* any judgment or decree is deemed filed within the meaning of section 473.360 as of the time a copy of the judgment or decree is filed in the probate court as required by this section."

█ It should first be noted that these statutes are considerably more far reaching than the previous non-claim statutes, sections 464.020–464.070 RSMo 1949, V.A.M.S.; for instance, the prior statutes contained saving provisions to infants, persons of unsound mind and persons imprisoned; there was no requirement of the filing of notice of suit, and no such provision as the present section 473.360, subd. 2; also, section 473.360, subd. 1 is much more inclusive than section 464.020, its earlier counterpart. Indeed the very method of consummating a claim has been changed from an exhibiting and presenting to the filing. We may also observe that the new act has not attempted to impair the general jurisdiction of the circuit courts in actions against executors or administrators. Note, for instance, sections 473.367, 473.-363, 473.370, 473.373. These sections are simply a continuation of the statutory method of liquidating claims in the circuit courts, but subject to specific limitations. Taking these statutes at their face value, they bar (or abate) all claims, whether filed in the probate court or instituted in the circuit court, unless the claim *or the required notice of suit or copies of the process and return* are timely filed in the pro-

bate court. We have very recently held in the case of North v. Hawkinson, Mo., 324 S.W.2d 733, that an action in equity for an accounting and a money judgment was barred and properly dismissed, where filed more than nine months after the first publication of notice of letters. There is much in the two opinions in that case which is applicable here. It seems obvious that unless there is some exception not apparent on the face of these statutes, the present suit is barred and was properly dismissed.

██ The various theories briefed by the appellant may fairly be stated as follows: that the assets of this estate are insignificant, the estate is insolvent, and that the non-claim statutes should be broadly construed as applicable only to suits in which a judgment would be satisfied out of the assets of the estate, as it could not be here; that the liability insurance constitutes a "special trust fund" for the payment of plaintiff's damages, that no assets will be impaired, and that the administratrix is a mere formal party, necessary, however, for the institution and maintenance of the suit and "to enforce payment" from the insurer; also, that the administratrix has waived "notice of suit." The evidence elicited here concerning insurance was most incomplete; at best, it merely indicated that a named insurer was "interested" and that defense counsel represented it, "together with the defendant * * *." We note here our statutes, sections 379.195 and 379.200 RSMo 1949, V.A.M.S.; the first provides, in substance, that on any policy of liability insurance, the liability upon the occurrence of loss "if liability there be, shall become absolute * * *," that the payment of the insurance shall not depend upon the payment of a judgment by the insured, and that the coverage may not be cancelled after a loss. Section 379.200 provides, in substance, that "upon the recovery of a final judgment" against an insured (including administrators or executors), and after the lapse of thirty days, the judgment creditor may proceed in equi-

ty to have the insurance proceeds applied to satisfy the judgment. Since plaintiff has demonstrated no facts concerning the insurance coverage, we may assume that the policy contains the almost universal "no action" clause foreclosing all obligation to pay until after a final judgment. Cotton v. Iowa Mutual Liability Ins. Co., 363 Mo. 400, 251 S.W.2d 246. A final judgment against the insured is a prerequisite to the enforcement of the liability of the insurer. State ex rel. Anderson v. Dinwiddie, en banc, 359 Mo. 980, 224 S.W.2d 985 (construing the same insurance statutes); Haines v. Harrison, 357 Mo. 956, 211 S.W. 2d 489.

■■ Until 1947 a cause of action for wrongful death abated upon the death of the tort-feasor unless action had previously been filed. Haines v. Harrison, supra, where the cause was held to have abated both as to the tort-feasor and his insurer; and see Heil v. Rule, 327 Mo. 84, 34 S.W. 2d 90. See, also, 2 Laws 1947, p. 225, and as since amended in 1949 and 1955 to the present form of section 537.020, Cum.Supp. 1957, V.A.M.S.; Walker v. Ross, Mo.App., 71 S.W.2d 124. By virtue of the 1949 amendment (Laws 1949, p. 633–634) the appointment of an administrator was permitted upon the application of "any person interested in such right of action for death * * *." Since the enactment of these statutes, the executor or administrator of a deceased tort-feasor is the one and only defendant in an action such as this. This is not a suit on an insurance policy, but a tort action for death. Our courts have repeatedly held the view that the presence or absence of insurance coverage does not change the nature of an action or its issues. Nor is this a suit to trace and recover trust property or assets, as were certain of the cases cited by appellant. Cunningham v. Kinnerk, 230 Mo.App. 749, 74 S.W.2d 1107; Bond v. Unsell, Mo.App., 72 S.W.2d 871. In such cases the subject matter is generally held not properly included in the administration proceedings. And see the specific exception concerning the enforcement of liens in section 473.360, subd. 4. The cited cases concerning the enforcement of liens and secured claims are inapplicable here.

Some analogy may be found in those cases where it has been claimed that the coverage of the defendant by liability insurance should permit a recovery where the defendant would otherwise be immune. Baker v. Baker, 364 Mo. 453, 263 S.W.2d 29 (suit by infant against her father); Dille v. St. Luke's Hospital, 355 Mo. 436, 196 S.W.2d 615 (suit against a charitable hospital). Our courts have consistently denied recoveries sought upon that ground. In Stedem v. Jewish Memorial Hospital Association, 239 Mo.App. 38, 187 S.W.2d 469, the court had before it the predecessor sections of our sections 379.195 and 379.200, with the argument that a recovery would not deplete the funds and assets of the defendant because of the existence of insurance. The court held that the liability of defendant was not to be increased, nor its immunity vacated, by reason of the insurance. The court said in conclusion, 187 S.W.2d loc. cit. 473: "* * * our Supreme Court does not recognize the rule of qualified liability." The case of Miller v. Collins, 328 Mo. 313, 40 S.W.2d 1062, cited by appellant, is distinguishable. It involved an adjudication in bankruptcy after judgment, and while the case was pending on appeal. The judgment was affirmed on the merits and the statutory requirement of a judgment was met. A stay of execution against the defendant was ordered because of the bankruptcy. Incidentally, the court recognized (40 S.W.2d loc. cit. 1065) that the status of a liability insurer was, in effect, "that of a guarantor, * * * of liability determined and predicated on a judgment."

Appellant urges upon us various rules of construction of statutes. The purport of these and of the cited cases is, generally, that all provisions of a statute or of related statutes should be harmonized, that the meaning of words may be broadened or restricted if necessary, and that the ultimate

object is to ascertain the true legislative intent and the rational meaning and object of the act. Pursuing this course, counsel urge that the trial court construed the non-claim statutes too narrowly, that such a literal interpretation is not consistent with their entire purpose and policy, and that a broad and proper construction would hold them inapplicable where, as here, the assets of an estate will not be depleted or the heirs and legatees affected; also, that the filing of the notice of suit would have been a "futile" thing, because the administratrix had already been served, and that to apply the statutes here would be wholly unreasonable. We do not question the soundness of the suggested rules of construction where properly applicable. They are not so applicable here as to be in any way controlling. There is no ambiguity in these statutes which permits the existence of liability insurance or the fact that the estate was valued at $125 to work a rejection of the plain terms of the statutes. We may not rewrite these statutes. The materiality of the insurance does not arise until there has been a valid judgment against the administratrix and there can be none on these facts.

■ It may be pertinent here to note that non-claim statutes, even under our former act, were held to be mandatory and in effect jurisdictional. Harrison Machine Works v. Aufderheide, 222 Mo.App. 474, 280 S.W. 711; Montelius & Fuller v. Sarpy, 11 Mo. 237; Zuckerman v. McCulley, 8 Cir., 170 F.2d 1015; Beekman v. Richardson, 150 Mo. 430, 51 S.W. 689; Curtis v. LaForce, Mo.App., 29 S.W.2d 191; Helliker v. Bram, Mo., 277 S.W.2d 556, 561. Our courts have applied the non-claim bar, to the exclusion of the general statutes of limitation, to actions of substantially all types, except to those for the recovery of specific property never properly in an estate, or for the enforcement of specific liens or trusts. There has been much discussion in the briefs of the Helliker case, supra. The court there definitely held that tort actions against the estates of deceased tort-feasors were subject to the non-claim provisions of the old Probate Code, and that a suit filed more than one year after the issuance of letters was properly dismissed. Much is made of the parenthetical assertion there that the judgment would be "a debt payable out of the assets of the estate"; the opinion does not indicate whether insurance was or was not present in that case, but that point was not made an issue. We do not construe the statement just quoted as controlling in that decision. The ultimate holding was and is that a judgment against an executor or administrator in a tort action is "subject to the same limitations as any other form of demand allowable against the estate. Such a construction is permissible in view of the broad and all-inclusive language contained in Chapter 464, and is in accord with the public interest which is promoted by the prompt settlement of the estates of deceased persons." We note also that although there may be liability insurance, an estate would always be subject to a contingent liability upon a tort judgment, which liability might arise upon the insolvency of the insurer or because of the unenforcibility of the policy for violation of its provisions, or otherwise. The mere existence of insurance is not always a complete exoneration of the estate and its assets and heirs. If the courts should presume to say, as we are asked to do here, that the assets of an estate valued at $125 should be disregarded and a recovery permitted directly against the insurance,—then what,—may we ask—should we rule on an estate valued at $500, $1,000, $2,500 or $5,000, under otherwise similar circumstances? Where could one possibly draw the line, looking merely at the practical side of the question? The rulings sought here might well introduce a measure of chaos into the administration of estates (and the decisions of the courts), dependent to an extent upon the existence of liability insurance and the running of the five-year tort statute of limitations or the one-year death limitation, with all the contingencies engendered by these factors. We cannot rewrite the law for one particular set

of facts and circumstances, though the result may be harsh (Frazee v. Partney, Mo., 314 S.W.2d 915), as admittedly it is here. There is an ever present temptation to let "bad cases make bad law," which must sometimes be resisted.

■ Somewhat out of context we note here the contention that section 473.370 gives the right to establish a claim by judgment "in the ordinary course of proceeding, upon filing a copy of the judgment or decree in the probate court." Counsel say that in the ordinary course no judgment could be obtained and filed within nine months; that may often be true as to a suit instituted after the death, but the section applies as well to judgments in suits previously instituted, and it also comprehends judgments rendered in the lifetime of decedent. Paragraph 2 of the section clearly demonstrates that a judgment only becomes a valid claim as of the time of its filing in the probate court, *unless* notice of the institution or revival of the suit (as required by section 473.367 and section 473.363) is filed within 9 months, in which event it relates back and becomes a claim from the time of the filing of notice (actually, copies of the process and service under section 473.-367). When section 473.370 is thus considered as a whole, it does not in any way detract from the requirement of the filing of notice as specifically required in the *other sections, nor is it inconsistent with* those sections. It merely preserves the concurrent jurisdiction of the circuit courts, subject to an additional and new condition, that of the filing of notice (or copies) in the probate court.

More than a century ago our court ruled in Montelius & Fuller v. Sarpy, 11 Mo. 237, 238, that where one had admittedly lost his right to a judgment in assumpsit against the estate of a decedent by reason of the three-year non-claim statute, he would not be allowed to proceed to a judgment as "the foundation of a collateral proceeding against persons who have become Chouteau's voluntary or fraudulent alienees in his life-time." The court also said there,

loc. cit. 241–242: "* * * If a party, by his *laches,* loses his right to a judgment, he necessarily loses all contingent or collateral benefits which he might have derived from such judgment. And the question at last returns, is the statute a bar to the action? The object which the plaintiff may have in view when he institutes a suit, is of no consequence. If a bar to his recovery is presented, he cannot remove it by disclaiming any wish to use the desired judgment against the defendant. The construction of the statute of limitations must be uniform; the statute cannot be enforced or waived, according to the purposes of the suitor." Under a statute similar to ours, the Arkansas Supreme Court strictly enforced a requirement of the filing of notice of a circuit court tort suit. Turner v. Meek, 225 Ark. 744, 284 S.W.2d 848.

■ It is also insisted that the administratrix has waived the requirement of filing notice, especially since section 472.130 permits a waiver in writing of notice by any person legally competent, including administrators. Pursuing the subject, counsel urge that the "tacit admissions" in defendant's answer constituted such a waiver. The only admissions we find are of the appointments of the guardian and the administrator. We have long had a statute providing that an executor or administrator might, in writing, waive the service of a notice of demand and presentation. Section 464.190 RSMo 1949, V.A.M.S. The present section was enacted in 1957 (Laws 1957, p. 835, effective June 12, 1957). It *is at least doubtful if the answer here would* constitute a waiver even were the notice one which might be waived; but we construe section 472.130 as inapplicable to the *notice required here.* The statutory notice (section 473.360, subd. 2) or copies of process and service (section 473.367) were specifically required to be *filed "in the probate court,"* not merely to be *served* on the administrator. It is a notice in an in rem proceeding, intended to afford protection as well as notice, to all interested parties and to the Probate Court. The burden of filing

the notice is upon the plaintiff, not upon the administrator. Moreover, the general statutes require service of process on the administrator, as on any other defendant, and the filing of an answer by him. If these steps constituted the required notice or a waiver of notice, then the carefully selected provisions of the present notice requirements were wholly pointless. In other words, if the filed notice was merely another notice to the administrator, there would be absolutely no point in thus giving him, or her, two notices of the suit. It is thus seen that there is an additional purpose in and reason for the filed notice. Even under the old law, which required the exhibition and filing of claims, our courts were strict in forbidding any waiver by an administrator of the time of filing claims. Harrison Machine Works v. Aufderheide, 222 Mo.App. 474, 280 S.W. 711, and cases there cited. This has some bearing, by analogy, upon the right of the administrator to waive the positive requirements of our present statutes. In the recent Arkansas case of Turner v. Meek, 225 Ark. 744, 284 S.W.2d 848, at loc. cit. 849, 850 the court said, in answer to a similar contention of waiver (adopting in part language of the trial court): " 'The Legislature, in enacting the remedy under Section 62–2602, seems to have had in mind that where an estate is sued some notice thereof in writing should be filed with the probate court having jurisdiction over the estate. A copy of the complaint may be filed, or, in lieu thereof, a signed statement giving all of the details ordinarily found in a complaint, may be filed. In the face of such language it is believed that if actual notice, such as the personal representative always has by service upon him of summons, were intended to suffice under this statute, that the Legislature would have so said if they wished the court to so hold.' * * * The amended statute clearly placed the additional duty on the plaintiffs, and not upon the executor, to file either a copy of the complaint or a statement of the nature of the action, etc., with the probate court prior

to November 27, 1952, and this was not done. In making proper determinations and orders relative to claims, family allowance, dower, etc., at the termination of the six-months period on November 27, 1952, the probate court was entitled to rely upon the statute, which was not complied with by the mere service of process on defendant in this action. * * *" Appellant has not urged estoppel, as distinguished from waiver, but in the Harrison case, supra (280 S.W. 711, 712) it was also held that the administratrix could not, by her agreement with a claimant, estop herself from insisting upon the enforcement of the non-claim statute. We find no acts or representations of the defendant here which could legally induce plaintiff to believe that the filing of the notice was unnecessary, even if the administratrix had the authority so to act. She filed a more or less formal answer, long before the expiration of the nine-month period, and shortly after its expiration she filed her motion to dismiss. We should not lose sight of the fact that the basic purpose of the requirement of the filing of this notice is that all parties interested in an *in rem* proceeding, as well as the probate court, might be advised of record of all such matters affecting their interests. We rule that the requirement of the statutes was not waived, nor was there any estoppel.

■ We have decided to refer to one point not briefed, but directly involved, because of its importance to the Bar generally, having in mind also the possibility of remedial legislation, if such should be deemed advisable. We have ruled that ordinary tort actions are barred by a failure to comply with the non-claim statutes. The remaining question is: does the fact that this is a wrongful death action, generally governed by its own period of limitations (section 537.100 RSMo 1949, V.A. M.S.) require a different ruling? We have determined that it does not. It has sometimes been said that the limitation period of the death act is part of a substantive, new right granted by statute, and that upon

the expiration of one year from the accrual of the cause of action, the right itself is gone. Barker v. Hannibal & St. Joseph Ry. Co., 91 Mo. 86, 14 S.W. 280; Baysinger v. Hanser, 355 Mo. 1042, 199 S.W.2d 644. But the contrary view, that the provision is a mere statute of limitation and repose, seems also to have been announced. Cytron v. St. Louis Transit Co., en Banc, 205 Mo. 692, 104 S.W. 109; Wentz v. Price Candy Co., 352 Mo. 1, 175 S.W.2d 852. As said recently in Frazee v. Partney, Mo., 314 S.W.2d 915, 918, " * * * perhaps, for practical purposes, the distinction is more academic than real." But as indicated there, the limitation of the death act is at least a special statute of limitations, now carrying certain tolling provisions of its own; but the exceptions and tolling provisions of the general statutes are wholly inapplicable. When our courts have thus spoken of "substantive rights" under the death act, they have ordinarily been saying, in effect, that the period of limitation provided in that act could not be *extended* by applying other statutory provisions or by construction. Baysinger v. Hanser, 355 Mo. 1042, 199 S.W.2d 644; Barker v. Hannibal & St. Joseph Ry. Co., 91 Mo. 86, 14 S.W. 280; Clark v. Kansas City, St. Louis & C. R. Co., 219 Mo. 524, 118 S.W. 40; Chandler v. Chicago & A. R. Co., 251 Mo. 592, 158 S.W. 35. That is not the question which we have here. In Moore v. Stephens, 264 Ala. 86, 84 So.2d 752, a death action was held to be barred by the Alabama nonclaim statutes, but the court did not discuss the distinction between death actions and ordinary tort actions.

Under our former Probate Code (sections 464.070 and 464.020, RSMo 1949, V.A.M.S.) all actions against an executor or administrator in which process was not served within one year from the first publication of notice of letters were presumably barred as claims against the estate. If at that time (and after the survival act was enacted) a tort-feasor was injured and died immediately, but the innocently injured party lingered for six months and then

died, the period for action by the latter's administrator against the tort-feasor's estate (normally one year from his own death) might have been cut down to a period well under one year by the running of the one-year non-claim statute, beginning from the first publication of notice of letters. At least, we might have had the same problem under the old statutes, and the shortening of the one-year limitation for death actions is not an entirely novel thing.

We have previously noted that a cause of action for death did not survive the death of the tort-feasor until 1947 (Laws 1947, Vol. 2, p. 225) unless suit had been filed. See Mennemeyer v. Hart, 359 Mo. 423, 221 S.W.2d 960. The 1947 Act, amended in 1949 and again in 1955, is now part of section 537.020. In Mennemeyer, supra, it was held that this survival act created a substantive right; it has become a part of the chapter which now incorporates the death act. By the present section any party interested in a right of action for death may apply for the appointment of a personal representative for the alleged tort-feasor. Actually, the present right of action arises out of a combination of the original death act and the survival act. The legislature has provided that the suit be brought against the personal representative and has given to interested parties the right to procure such an appointment. It has now enacted all-inclusive non-claim statutes fixing certain limitations and conditions upon the maintenance of all suits which shall constitute valid claims against an estate. It might be said that the very right to sue the personal representative of a tort-feasor for wrongful death stems from the survival statute of 1947, and not from the original death act. In an old Alabama case, Fretwell v. McLemore, 52 Ala. 124, in speaking of the non-claim statutes and the attendant survival of actions, the court said: " * * * It cannot be denied that as the causes which would survive against a personal representative were enlarged, they fell within the operation of the statute, and if not presented within the period

prescribed, they are barred." But be that as it may, the legislature had the right and the power to prescribe the time within which, and the conditions under which, all such suits against estates could be prosecuted. It has used wording such as: "all claims * * * due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, which are not filed in the probate court within nine months * * * are forever barred * * *" (Section 473.360, subd. 1); "all actions * * * shall be barred unless notice of the * * * institution thereof is filed in the probate court within nine months * * *" (Section 473.360, subd. 2); "Any action * * * is considered a claim duly filed * * * from the time of serving the original process * * * and the filing * * * in the probate court." (Section 473.367). This language can leave no doubt as to the effectiveness of the provisions here. It makes no exceptions and its provisions are mandatory. In view of the all-pervading terms of these non-claim statutes we hold that they bar a suit for death against the estate of a deceased tort-feasor unless the conditions there imposed are complied with.

In considering the legislative intent, we note that at the 1957 session section 507.100 was amended so as to change the period permitted for the substitution of parties and revival of a pending suit, upon the death of the defendant, from "one year after notice of death is filed * * *," to "nine months after the first published notice of letters * * *." Likewise, section 516.240 permitting a new action after the death of a defendant (where the cause of action survived) was amended so as to change the time permitted therefor from "one year after letters * * * granted," to "nine months after the first published notice of letters * * *." (See Laws 1957, pp. 293–294.) These amendments were obviously made in order to conform to the reduced periods permitted by the new non-claim statutes and, to a very substantial extent,

they show an intent on the part of the legislature to require conformance thereto in all civil actions. And we note again the omission of all saving clauses, as contained in the non-claim provisions of the former Probate Code.

There is no doubt of the legislative power to shorten the time for filing death actions as well as any and all other actions; it granted that right initially, provided later for its survival against a deceased tort-feasor's estate, and it may condition or limit the right as it sees fit. We find no intent to exclude death actions from the operation of the non-claim statutes. If the legislative intent is otherwise the statutes may be amended to express it. Incongruities may result, such as the division of the period of nine months between a widow and the surviving minor children, but we may not legislate here, and that question is not immediately involved. There have always been potential inconsistencies, as noted above. If the limitation of the death act and the non-claim statutes are regarded as conflicting special statutes of limitation dealing with the same subject matter, the non-claim statutes, being the last enacted, would control. State ex rel. Armontrout v. Smith, en Banc, 353 Mo. 486, 182 S.W.2d 571, 574; Collins v. Twellman, 344 Mo. 330, 126 S.W. 2d 231, 233. In any event, we regard them as controlling here.

The judgment of dismissal will be affirmed. It is so ordered.

All concur, except STORCKMAN, J., who dissents in opinion filed.

STORCKMAN, Judge (dissenting).

In North v. Hawkinson, Mo., 324 S.W.2d 733, 743, the question presented was whether the nonclaim provisions of the new probate code "were intended to apply to an action in equity filed in the circuit court against the executor of a probate estate more than nine months after the first publication of letters testamentary." We held that the action *filed out of time* was barred

because the nonclaim provisions had the legal effect of statutes of limitations and superseded the general statute which would have otherwise been applicable in that case. In the present case the action was instituted and service was obtained upon the defendant-administratrix within nine months after the first publication of notice of letters of administration. The deficiency consists of the plaintiff's failure to file notice of the institution of the action in the probate court within the nine-month period as provided in section 473.360, subd. 2, RSMo 1949, as amended (Cum.Supp.1957). I believe this factual difference compels a different result than that reached in the North case.

William Dee Organ, the defendant's intestate, and John Calvert Coulter and Esther Coulter, parents of the plaintiff's wards, died on September 1, 1956, as a result of a collision of motor vehicles. The defendant-administratrix was appointed on October 8, 1956, and the first publication of notice of letters was on October 11, 1956. Thirty days thereafter this wrongful death action was instituted in the circuit court and the defendant was served with summons on November 23, 1956, all well within the nine-month period after the first publication of notice of letters. In her answer filed on January 5, 1957, the defendant admitted certain averments of plaintiff's petition and denied others; she pleaded affirmatively contributory negligence but said *nothing* about notice of suit not having been filed in the probate court. The cause remained in this condition until October 16, 1957, more than a year after the first publication of letters, when the defendant filed her motion to dismiss. This was done, so far as it appears from the record, without obtaining leave and without withdrawing the answer on file.

The motion to dismiss alleged that the wrongful death action was barred under the provisions of sections 473.360, 473.363, and 473.367 because the plaintiff "failed *and*

*refused*[1] to file any claim in the Probate Court of Jackson County, Missouri, at Kansas City, against defendant or the estate of said Warren Dee Organ, deceased, within nine months after the aforesaid first publication of Letters of Administration Granted, or to file a copy of the process or summons issued in this cause to defendant herein and the return of service thereof in the Probate Court of Jackson County, Missouri," *within the nine months after the first publication of notice of letters of administration.* At the hearing on the motion the entire probate court file, as well as other evidence, was adduced. The defendant's motion to dismiss was sustained and the petition was dismissed at plaintiff's cost on December 26, 1957. This appeal was taken on the following day.

It appears that the application of the nonclaim provisions to the wrongful death act, which itself contains a special statute of limitations, presents insurmountable difficulties. Assuming, however, the applicability of the nonclaim statutes, I believe that principles of waiver and estoppel prevent the defendant from relying upon the nonclaim provisions in the circumstances of this case. Since this is a dissenting opinion, we will discuss all three of these questions, first the *related* questions of waiver and estoppel.

The pertinent provisions of the statutes relied on by the defendant need to be carefully noted. Section 473.363 has to do with actions pending against a person at the time of his death and need not be further considered. Section 473.367 pertains to actions commenced against an executor or administrator *after* the death of the decedent and provides that such an action "is considered a claim duly filed against the estate from the time of serving the original process on the executor or administrator and the filing of a copy of the process and return of service thereof in the probate court." This section appears to contemplate that a copy of the process and return

---

1. All italics within quotations are supplied unless otherwise noted.

of service shall be filed in probate court in order to constitute the action "a claim duly filed against the estate", but does not limit the time for filing. However, section 473.-360, subd. 2 provides that all actions against the estate of a decedent person filed under section 473.367 "shall be barred unless notice of the * * * institution thereof is filed in the probate court within nine months after the first published notice of letters." The latter provision does not spell out what the notice shall contain.

If we assume that the notice consists of "a copy of the process and return of service thereof", necessary prerequisites are (1) the institution of an action and (2) service of process upon the executor or administrator. These two preliminary elements, as well as the notice, were missing in the North case. The narrower question presently before us is whether this notice can be waived and the defendant be estopped from relying upon the failure to file it.

If the failure to file the notice in probate court had the effect as defendant claims of ripening into a bar under the statute of nonclaim at the end of nine months from the first publication of notice of letters, then its omission must have had some legal effect which the defendant could have taken advantage of during the pendency of the action prior to the expiration of the nine-month period. Otherwise, if the action had been brought in a jurisdiction where it could have been tried and disposed of within the nine-month period, the defendant would have been unable to use that fact as a defense to the maintenance of the action. We do not think that the defendant was in this situation. Section 473.367 does not purport to bar the claim but does provide that an action instituted does not have the status of a claim "duly filed against the estate" until the required notice is filed in the probate court. This section appears to have been intended to cover the period of time prior to the expiration of the nine-month period. Thus, the filing of the notice was in the nature of a condition precedent to the maintenance of the action, the nonper-formance of which was a ground for the abatement or suspension of the action until the notice was filed or the action was barred by reason of the plaintiff's refusal to do so. 1 C.J.S. Abatement and Revival § 86, p. 126. (Incidentally, there is no showing in the record that the plaintiff *refused* to file the notice, as charged in the motion to dismiss.)

Joyce v. Sauk County, 206 Wis. 202, 239 N.W. 439, involved a statute providing that no action should be brought or maintained against a county unless the claim had first been presented to the county board. It was held that the failure to file a claim in such a situation was a matter that might be taken advantage of by a plea in abatement. 239 N.W. 441–442 [4]. Our inquiry then is whether the failure to file notice in probate court was a matter which the defendant should have pleaded and was waived by her failure to do so.

Since this action was instituted in the circuit court, the pleadings must be in accordance with the Civil Code which requires a party pleading to a preceding pleading to set forth affirmatively, inter alia, the statute of limitations "and any other matter constituting an avoidance or affirmative defense." Laws 1943, p. 353, §§ 2 and 40; sections 506.010 and 509.090. Even where a claim is pending in probate court if a defendant chooses to file an answer, it should contain all the defenses intended to be relied upon. Sutton v. Libby, Mo.App., 201 S.W. 615.

Section 509.170 provides that a denial of the performance of a condition precedent shall be made specifically and with particularity. Section 509.290 sets out a number of specific objections which may be raised by motion and also provides for "other matters".

Section 509.330 requires that all motions shall be made within the time allowed for responding to the opposing party's pleading or, if no responsive pleading is permitted, then within twenty days after the service of the last pleading. After providing for the consolidation of motions, section 509.340

states: "A party waives all objections and other matters then available to him by motion by failure to assert the same by motion within the time limited by section 509.330, except failure to state a claim upon which relief can be granted, or failure to state a legal defense to a claim, and except lack of jurisdiction over the subject matter."

Section 509.400 provides that all defenses and objections for which there is no provision for raising by motion shall be raised in the responsive pleading and further provides that: "If a responsive pleading is required all defenses or objections not raised therein are waived, except failure to state a claim upon which relief can be granted, or failure to state a legal defense to a claim, and, except lack of jurisdiction over the subject matter."

During the nine-month period, the failure to file the notice, considered as a defense to the maintenance of the suit, is similar in principle to lack of jurisdiction over the person or improper venue mentioned in section 509.290 and should be considered as one of the "other matters" referred to in that section which "may be raised by motion whether or not the same may appear from the pleadings". If not raised by a motion, then certainly the omission to file is an "other matter constituting an avoidance or affirmative defense", section 509.-090, or falls within this provision of section 509.400: "*All defenses and objections* for which there is no provision for the raising of the same by motion shall be raised in the responsive pleading if one is permitted." The whole purpose of the pleading provisions of the Civil Code seems to be to require affirmative pleading of matters where the issues are not completely made by the admission or denial of the opposite parties pleading. We know of no special set of rules applying to executors or administrators as parties litigant in the circuit court which permits them to conceal where others must reveal. Section 473.370, subd. 1.

I would hold that where an action is instituted against an estate in the circuit court and service of process is obtained within nine months after the first publication of notice of letters, but notice thereof is not promptly or timely filed in the probate court, such omission or failure is a matter which the defendant-administrator must raise by motion or plead in his answer and, if he fails to take advantage of his right and duty to plead the matter at the proper time, he will be deemed to have waived it as a ground of defense or objection. Sections 509.340 and 509.400.

Section 472.130 of our probate code provides: "*Any person legally competent may in person or by attorney waive in writing any notice required by this code or by rule or order of court. An executor or administrator may make waiver either in person or by attorney.*" I consider this to be not inconsistent with the pleading provisions of the Civil Code. If a writing was necessary, it was provided by the defendant's answer and its legal effect under the Civil Code. See also State ex rel. Kansas City v. Harris, 357 Mo. 1166, 212 S.W.2d 733, 735 [4], holding that a question of abatement, such as another action pending, should be raised by answer and is a matter that is waived if not pleaded.

If the right to plead the lack of notice as a defense to the maintenance of the action during the nine-month period was also a duty under our pleading statutes and was waived by defendant's failure to raise it at the proper time, then it would appear most unfair and inequitable to permit the defendant to revive the matter and use it as a predicate for a plea in bar after the expiration of the nine-month period. This premise leads us into the consideration of estoppel. See 53 C.J.S. Limitations of Actions § 25, p. 962, and 31 C.J.S. Estoppel § 61 b, p. 245.

Many of the elements noted in the discussion of waiver enter into the consideration of estoppel and will not be repeated. However, there are additional facts, developed at the hearing on the motion to dismiss, which should be noted in connection

with the issue of estoppel. The records of the probate court show that it was only after the public administrator of Jackson County filed his petition that Helen Delores Organ, a sister of the decedent, applied for letters of administration. Other brothers and sisters of the deceased assigned to the defendant-administratrix all their rights, titles and interests as heirs and distributees of the estate. The inventory and the semi-annual settlement show the value of the estate to be $125, consisting of clothing and personal effects $75, and the salvage value of a Buick automobile $50. There is an order finding no inheritance tax due. As of the date of the hearing on the motion to dismiss on December 26, 1957, no claims had been filed against the estate other than the notice of the present suit filed on November 18, 1957, which was after the filing of defendant's motion to dismiss. The firm of attorneys who represent the defendant in the wrongful death action also represent her as administratrix of the probate estate and one of the partners signed as surety on her $100 bond. There was also evidence at the hearing that the same firm of attorneys represented the State Farm Mutual Insurance Company and that the insurance company was "interested in the defense" of the wrongful death action.

In Sugent v. Arnold's Estate, 340 Mo. 603, 101 S.W.2d 715, the contention was made that the respondent was estopped from invoking the statute of limitations and this court stated at loc. cit. 718 [10] of 101 S.W.2d: "The rule of law by which this contention should be determined is well stated in 9 Ann.Cas. 755, as follows: 'It is a well settled rule that a defendant who has not expressly waived the defense of the Statute of Limitations may be estopped by his conduct from setting up the statute where, his conduct, though not fraudulent, has nevertheless induced the plaintiff to delay bringing suit until after the expiration of the statutory period.'" The doctrine of estoppel, in avoidance of a statute of limitations, is generally recognized although it is applied with caution. 53 C.J.S. Limitations of Actions § 25, p. 962.

The Supreme Court of the United States had occasion to consider this subject matter recently in Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 762, 3 L.Ed.2d 770. This was an action under the Federal Employers' Liability Act to recover damages for an industrial disease. The act provided a period of limitation of three years from the day the cause of action accrued, but the plaintiff claimed that the defendant was estopped from raising this limitation because it had induced the delay by representing to the petitioner that he had seven years within which to sue. The court held that the question of estoppel was sufficiently pleaded and reversed the judgment dismissing the action. In the course of the opinion, it is stated: "To decide the case we need look no further than the maxim that no man may take advantage of his own wrong. Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations." And then again: "We have been shown nothing in the language or history of the Federal Employers' Liability Act to indicate that this principle of law, older than the country itself, was not to apply in suits arising under that statute. * * Despite the delay in filing his suit petitioner is entitled to have his cause tried on the merits if he can prove that respondent's responsible agents, agents with some authority in the particular matter, conducted themselves in such a way that petitioner was justifiably misled into a good-faith belief that he could begin his action at any time within seven years after it had accrued."

Albert v. Patterson, 172 Mich. 635, 138 N.W. 220, 222, involved a petition for leave to issue an execution on a judgment about to be barred by a ten-year statute of limitation. The matter was argued and taken under advisement and the trial court would

have granted the petition in time to avoid the bar of the statute except that defendant's counsel obtained an ex parte order for leave to file a bill of review. The order should not have been granted, but it had the effect of staying the petition for execution until the period of limitation had run. The Supreme Court of Michigan held that the defendant was estopped from pleading the statute of limitations against the enforcement of the execution because "the circuit judge was misled, and lulled into inaction upon the petition, by the irregular practice of defendants' solicitor." The court further stated it was no answer that the plaintiff had another remedy by which she could have sued at law on the decree.

The case of In re Fitzgerald's Estate, 252 Pa. 568, 97 A. 935, was one in which a judgment for personal injuries was rendered against a publishing company which had never completed its incorporation so that the publishing plant in fact belonged to the estate of a decedent. The true fact of the defendant's status, however, was unknown to the plaintiff until after the statute of limitations had run in favor of the estate. The court held the estate was estopped to take advantage of the bar of the statute stating, 97 A. at page 937: "In the present case the Fitzgerald Estate, the sole owner of the business of the Item Publishing Company, defended against appellants' claim on its merits, sued the casualty company to recover the judgment obtained against it, transacted business at all times in the name of the Item Publishing Company, under which it was sued, and *made no objection* for want of proper party during the trial and *until after the statute of limitations had run*. Under the circumstances it would be gross injustice to permit such defense to be raised at this time in order to escape liability."

I agree with the majority opinion that the fact there was insurance on the liability of William Dee Organ (or Warren Dee Organ as the name appears in most places in the probate court files) does not warrant our treating this case as one in legal effect against the insurance company and thereby disregarding the statutory requirements with respect to the institution and maintenance of an action against the estate of a decedent. However, we are not required to "stick in the bark" and ignore the underlying facts connected with the appointment of the administratrix and the handling of the affairs of the estate and the heirs and distributees if they have a bearing on the failure to plead the lack of notice and hence on the issue of estoppel. We believe some of these record facts do have an important bearing.

First the assets of the estate were worth at most $125. After payment of expenses of administration, especially if attorney fees were charged, there would be hardly anything left as an incentive for an heir or distributee to conduct the administration. On the alternative order appointing Helen Delores Organ as administratrix, which was signed by the probate judge, there was this handwritten notation: "No letters here, or like it, to issue unless $25.00 cost deposit paid." Except for the wrongful death action in the offing, there was no occasion for a complete administration. The meager assets of the estate might have been more readily and economically applied to the expenses of Mr. Organ's death and burial under an order of refusal of letters, section 473.090, subd. 1(2), or collected and disposed of as a small estate by his brothers and sisters as distributees, section 473.097.

Instead, the prior petition of the public administrator was sidetracked and letters were granted to Helen Delores Organ. On her original application for letters, the attorneys for the estate are shown as the same firm that are of record in this case and who represent the insurance interest. One of the members of the firm signed as surety on her bond of $100 as administratrix. As previously stated there are no creditors of the estate, other than this plaintiff, and the defendant is the sole heir and distributee by reason of the assignments executed by her brothers and sisters. The conclusion is in-

escapable that the insurance company has the primary interest in this administration, and that it was solely responsible for the conduct of the litigation and the withholding of the plea of failure to file the notice. Proceeds of the liability insurance would never become a part of the general assets of the estate, sections 379.195 and 379.200; and the inventory of the estate makes no such claim.

The justice of holding the defendant in this case to be estopped becomes more apparent when the nature of the act omitted is considered. The action had been instituted and the defendant served. The process and service upon the defendant were then public records. The defendant had no control over the institution of the action or directing service, but she did have access to the records of process and service. She had all the information that filing of the notice in probate court could have given her. If the notice required by sections 473.-367 and 473.360, subd. 2 has any reasonable basis, it must be to inform those interested in the estate, the creditors, heirs and distributees, of the claims and demands being made upon the estate.

Actually there was no other person interested in the estate. There were no creditors and the heirs and distributees had all assigned their interests to the administratrix, the defendant herein. Fairness and justice demand that the doctrine of estoppel be applied in the circumstances of this case and I would so hold. A more fitting case for its application can hardly be imagined.

Going to the question of whether the limitation provisions of the wrongful death act, section 537.080, as amended in 1955, are superseded by the nonclaim provisions of the new probate code, it appears to me that these provisions of the two acts are conflicting in some respects and cannot be harmonized by judicial construction.

Section 537.100 provides that every action instituted under section 537.080 "shall be commenced within one year after the cause of action shall accrue". This section fur-

ther provides that the time during which the defendant is absent from the state after the cause of action accrues shall not be counted as a part of the time limited for the commencement of the action, and if an action is timely brought and the plaintiff suffers a nonsuit, the plaintiff may commence a new action from time to time within a year after such nonsuit.

Unlike the form of statute in some states, where the personal representative has the sole right to bring the action, section 537.080 provides that the damages in a wrongful death action may be sued for and recovered: "(1) By the husband or wife of the deceased; or (2) If there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased, * * *." If there be no husband, wife, minor child or minor children, or if the deceased be an unmarried minor and there be no father or mother, suit may be instituted and recovery had by the administrator or executor of the deceased and the amount recovered shall be distributed according to the laws of descent.

As we have previously noted, section 473.360, subd. 2 provides that all actions instituted against an estate after the death of the deceased person, pursuant to section 473.367, shall be barred unless notice of the institution of the suit is filed in the probate court within nine months after the first published notice of letters.

Moore v. Stephens, 264 Ala. 86, 84 So.2d 752, held that the six months statute of nonclaim applied to a wrongful death action brought against the estate of a decedent. However, the only person authorized to sue under the Alabama Wrongful Death Act, § 123, Title 7, Code of Alabama 1940, is the personal representative. The Alabama Act has nothing similar to the provision of the Missouri Act authorizing the action for wrongful death to be brought within six months by the surviving spouse and, if the action is not appropriated by the spouse during such time, then the minor children

shall have six months thereafter within which to sue for their parent's death. This presents a conflict which, in my opinon, cannot be resolved by the courts but must be adjusted by the General Assembly if it is the legislative intent that the nonclaim statute shall apply. Some other statutes were amended so as to harmonize them with the nonclaim statutes. See sections 507.100, subd. 1(3) and 516.240.

It is true that we are not here faced with a case in the category mentioned since the parents of the plaintiff's wards were both killed at the same time. However, the statute of nonclaim should have a uniform application. I do not think that we can say that it applies to all plaintiffs in wrongful death actions against an estate except where there is a surviving spouse and minor children.

We are concerned with determining the legislative intent but this is obviously a situation in which the General Assembly has not spoken. I cannot believe that this court has the right to say that three months shall be pared from the six months allotted to the surviving spouse, or the six months allowed the minor children for bringing suit, or that a month and a half should be taken from each in order to make the nine months nonclaim period applicable to the wrongful death act which carries its own special limitation of one year.

In State ex rel. Wright v. Carter, Mo., 319 S.W.2d 596, 599 [4], this court en banc stated: "We do not think it is a judicial function to read such an alteration or exception into a statute, especially one which is also ambiguous in other respects." The courts are prohibited by the constitution from usurping the lawmakers' function. Our construction of statutes should be reasonable and avoid unjust and absurd results. Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, 253 S.W.2d 832, 835 [3]. Macon County v. Farmers' Trust Co., 325 Mo. 784, 29 S.W.2d 1096, involved the short statute of limitation for the institution of

suits against the commissioner of finance on an unproved claim against a bank of which the commissioner had taken possession. This court held that the cases to which the shortened period of limitation applied will not be extended by construction, stating at loc. cit. 1098 [3] of 29 S.W.2d: "While the rule in this state is that statutes of limitation are looked upon with favor, unless clearly unreasonable (Faris v. Moore, 256 Mo. 123, loc. cit. 132, 165 S.W. 311), yet it is also a well-known rule that a statute of limitations should not be applied to cases not clearly within its provisions and its application should not be extended by construction." In dealing with the limitation on a will contest, in the case of Gresham v. Talbott, 326 Mo. 517, 31 S.W.2d 766, 767 [1], this court stated: "The law favors the right of action rather than the right of limitation."

In Turner v. Meek, 225 Ark. 744, 284 S.W.2d 848, the plaintiff sued an estate for wilful assault committed by the testator during his lifetime. The court held that the action was barred by the nonclaim statutes because a notice, similar to that required in Missouri, was not filed in probate court. However, the facts were not comparable to those in the present case and the Supreme Court of Arkansas did not consider the question of waiver or estoppel. It appears from the opinion, however, that the plaintiff suffered a nonsuit and was permitted to refile her complaint, a thing which apparently would not be permitted in this state if the nonclaim statute supersedes the special limitation provisions of the wrongful death act.

While I have serious doubts with respect to the application of the nonclaim statute of limitations to an action brought under the wrongful death act, I do not think this needs to be expressly decided in this case. To me this factual situation presents a strong and compelling case for equitable estoppel and I would put the decision on that ground buttressed by the elements of waiver discussed.