JOANNE STEDEM, PRO AMI, v. THE JEWISH MEMORIAL HOSPITAL ASSOCIATION OF KANSAS CITY.—187 S. W. (2d) 469.

Kansas City Court of Appeals. April 30, 1945.

*James P. Kem* and *J. R. Kaspar* for appellant.

*Stanley Garrity, John W. Oliver* and *Caldwell, Downing, Noble & Garrity* for respondent.

BLAND, P. J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $1500. The court sustained defendant's motion for a new trial, resulting in this appeal by the plaintiff.

The facts show that the defendant is an eleemosynary association or corporation organized, pursuant to a decree of incorporation of the Circuit Court of Jackson County, to own, operate and conduct "A charity and pay hospital," a nurses, school and "other enterprises of a benevolent and charitable nature."

Defendant operates a hospital. Plaintiff, a child about seven years of age, was a pay patient therein on July 5, 1943, when she was injured by a pitcher of hot water tipping over upon her as a result of the tray, or platform, upon which it was placed by a nurse, being defective. The tray "wobbled back and forth."

There was ample evidence for the consideration of the jury as to the negligence of the defendant, its servants and agents, but it is defendant's contention that it is immune from liability on account of the fact that it is a charitable institution. Plaintiff admits the general rule of nonliability of such institutions, in cases of this kind in this state, but insists that, as defendant carried liability insurance, there is a liability on the part of the defendant to the extent of the proceeds of the insurance policy.

In some jurisdictions the doctrine of non-liability is not recognized. In the majority of the states, including Missouri, it is recognized and is based upon various considerations. One of the reasons assigned for non-liability is that the property and income of a charitable institution constitutes a trust fund for the charitable purposes of the organization which may not be depleted or diverted from such purpose, either directly by act of the trustees or managing officers, or indirectly by payment of damages for their negligence. Another reason assigned is that it is better public policy to hold them exempt; another is that the doctrine of respondeat superior does not apply; another, that one accepting the service or benefit of such an institution thereby impliedly consents to waive any claim for compensation for injuries that may be received through its negligence.

In Missouri the ground for non-liability is based upon the trust fund and public policy theory. [See Eads v. Y. M. C. A., 29 S. W. (2d) 701, and cases cited therein.] In that case, l. c. 705, the court said:

"The diversion of such funds in such a way would probably destroy the institution, and a wise public policy forbids such a result. It is to the interest of the public that such institutions be maintained, and a principle which requires the interest of an individual to be subordinated to the good of the public is not a stranger to our legal principles."

Plaintiff recognized the rule announced in the Eads case but states that that case is based upon the theory that the allowance of a recovery in cases of this kind might result in a dissipation of the trust fund; while a recovery, in this case, within the limits mentioned, would not affect the fund. In this connection plaintiff relies upon the well recognized rule that when the reason for the application of any rule of law ceases, the rule will not be applied. In this connection, plaintiff states: "Since any judgment recovered by the plaintiff will be paid by the insurance carrier, the reason for applying the rule of the

Eads case fails, and the rule of the Eads case is therefore inapplicable."

Plaintiff calls our attention to sections 6009 and 6010, Revised Statutes Missouri, 1939, and says that by reason of these "The Insurance Carrier has a very real connection with the case." Section 6009 provides that where defendant "is insured against loss or damage on account of the bodily injury or death or damage to property by accident of any person, for which loss or damage such person, firm or corporation is responsible, whenever a loss occurs on account of a casualty covered by such contract of insurance, the liability of the insurance company, if liability there be, shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the insured of a final judgment against him for loss, or damage, or death."

Section 6010 provides that upon a final judgment against defendant in such an action, if defendant was insured against loss or damage at the time when the right of action arose, "the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance . . . . . . . applied to the satisfaction of the judgment."

Under these statutes "the obligation on the part of the insurer to pay accrues the moment judgment against the insured has been rendered." [Homan v. Employers Reinsurance Corp., 136 S. W. (2d) 289, 295.] In other words, a direct and primary obligation to the plaintiff to pay the judgment is imposed upon the insurance company.

We think there is no merit in plaintiff's contention. The statutes in controversy do not impose any greater liability upon the insurance company than that fixed by the terms of the policy between it and the insured. In other words, the liability of the insurance company is to be measured by the terms of the agreement as evidenced by the insurance policy. [Homan v. Employers Reinsurance Corp., supra, l. c. 300.] Under the policy herein the insurance company agreed "to pay all loss by reason of the liability imposed by law or contract upon the Insured (including its officers, directors, trustees, administrators, members or shareholders, as such) for damages (including counterclaims in suits brought by the Insured to collect loss or other charges) on account of injuries including damages allowed for loss of services and expenses suffered by any person or persons." In the policy it was also agreed that the insurance company would defend in the name and on behalf of the insured any claim or suit for damages, even if groundless, brought on account of such injuries and would pay all costs taxed against insured and interest accruing on the verdict and judgment, etc.

It thus appears, by the terms of the policy, that the insurance company agreed to pay any loss of the insured (the defendant) to the extent of the latter's liability, only. In other words, the insurance covered the liability of the defendant whatever that might become and

not some other or greater liability. To hold that defendant's liability was increased by the mere existence of the insurance policy would, in effect, be writing a different contract of insurance than that entered into between the parties. It is well settled that a policy of insurance "being a voluntary contract, the parties may make it on such terms, and incorporate such provisions and conditions, as they see fit to adopt, and the contract as made measures their rights." (32 C. J., pp. 1091, 1092.) Of course, the contract must not be in violation of law. "The basis on which the defendant's legal liability for torts rests would not be changed by its entering into a contract with an insurance company by which the latter for a consideration and within specified limits undertakes to assume responsibility for damages resulting from accidents for which the defendant might be found to be liable, even though thereby to a certain extent the diversion of the funds of the defendant to that purpose might be avoided." [Enman v. Trustees of Boston University (Mass.), 170 N. E. 43, 44.] "It is apparent that the contract is one of indemnity only, and, if there be no loss, there is no liability on the part of the insurance company." [Williams Adm'x. v. Church Home for Females and Infirmary for Sick (Ky.), 3 S. W. (2d) 753, 754.]

To sustain plaintiff's contention it would be necessary (1) to rewrite, by construction, the contract of insurance so that it would become a contract between defendant and the insurer for the benefit of a third person, and not an insurance contract at all.

(2) It would tend to restrict freedom of contract, in that, charitable institutions, like all other persons or corporations, have the privilege of entering into contracts, not unlawful, as they may see fit. Whereas, if the law were as plaintiff contends, the institution would not have the benefit of complete freedom of contract but would have the election to forego insurance and assume its own liability, whatever that might be, or, to take out insurance and assume the liability, to the extent of the amount of the policy, of persons or corporations not enjoying its status as an institution exempt from liability. This might well result in its being deprived, indirectly, of some of its substantial rights, which it has by reason of its being a charitable organization. In this connection, it may be assumed that the amount of premiums charged upon a policy of this kind, is calculated, to some extent, at least, upon the risk or hazard assumed on the part of the insurance company. It has been recognized that, even though charitable institutions are absolved from liability in actions of this kind, it may be good business judgment for them to carry indemnity insurance. [See Susman v. Y. M. C. A. of Seattle (Wash.), 172 Pac. 554, 557.] This may be especially true as to the defendant in this case in view of the provisions of the policy before us. In this policy the insurance company agrees to defend any claim or suit for such injuries that may be brought against defendant, even though groundless, and to pay

costs. It may have been also good business judgment on the part of the defendant to have taken out insurance against loss by reason of liability, alone, for, although it seems to be the well settled policy in this state to hold charitable institutions exempt from liability in cases of this kind, suits are constantly being brought against such institutions in an effort to have the courts modify or whittle away the rule of immunity. This situation is recognized in the case of President and Directors of Georgetown College v. Hughes (D. C.), 130 Fed. (2d) 810, where the author of the opinion pointed out that, even in those jurisdictions which recognize the rule of non-liability, several of them hold that there are exceptions. Some of which exceptions are to the effect that such organizations are liable for the negligent injury to their employees, or to a stranger, that is to say, a person not a beneficiary of the trust. Another exception recognized in some jurisdictions is to the effect that such institutions are not liable for injuries suffered as a result of the incompetency of the servants of the institution, if the officers have used due care in their selection. The author (who was of the opinion that the rule of non-liability of charitable institutions is based upon false grounds whatever the theory) concluded, l. c. 827, that "The rule of immunity itself has given way gradually but steadily through widening, though not too well or consistently reasoned, modifications. It is disintegrating. Each modification has the justification that it is a step in result, if not in reason, from the original error toward eventual correction. As more and more steps are taken, correction becomes more complete. The process is nearing the end." The judge goes on to state that when the rule of non-liability finally disappears the result will be of no greater cost to the charity "than the cost of litigating these claims over and over, for the issue will not down."

(3) Should plaintiff's contention be sustained it might well result in the dissipation of the charitable fund, itself, to some extent, in that such an institution might well decide that it would be better business judgment, in order to have protection, to even pay the excess premium. To the extent of the excess in the premium paid, the funds of the institution would be dissipated.

There are many authorities holding that the existence of liability insurance does not alter the liability of a charitable institution. [See Susman v. Y. M. C. A. of Seattle, *supra*; Williams' Adm'x. v. Church Home for Females and Infirmary for Sick, *supra*; Enman v. Trustees of Boston University, *supra*; McKay v. Morgan Memorial Co-op. Indus. and Stores, Inc. (Mass.), 172 N. E. 68; Greatrex v. Evangelical Deaconess Hospital (Mich.), 246 N. W. 137; Schau v. Morgan (Wisc.), 6 N. W. (2d) 212; Emerick v. Pa. R. Y. M. C. A., etc., 43 N. E. (2d) 733; 14 C. J. S., p. 556; 10 Am. Juris., p. 701.]

We have examined the cases of McLeod v. St. Thomas Hospital (Tenn.), 95 S. W. (2d) 917; Vanderbilt University v. Henderson

(Tenn.), 127 S. W. (2d) 284 and O'Connor v. Boulder Colo. Sanitarium (Colo.), 96 Pac. (2d) 835, cited by the defendant. In these cases the States of Tennessee and Colorado recognize the rule of non-liability based upon the trust fund theory but hold, to the effect, that liability insurance is not trust property and may be appropriated to pay a judgment. The Supreme Court of Tennessee proceeds upon the theory that there is no absolute non-liability, on the part of a charitable institution, for damages based upon negligence, and that a judgment may be rendered against such an institution, but can only be satisfied out of the assets or property not impressed with the trust and where that property is a liability insurance policy the execution must be directed to the policy only. It is held that a judgment may be taken against the institution to be so limited that it can be satisfied, only, out of the insurance. The Supreme Court of Tennessee attempts to recognize the fundamentals of liability insurance by stating that the rule of non-liability of a charitable institution is not changed by reason of the fact that it carries such insurance.

The Supreme Court of Colorado proceeds upon a somewhat similar theory evolved by the Tennessee Court. However, in the case of O'Connor v. Boulder Colo. Sanitarium, *supra,* that court recognizes the inconsistency of saying that the existence of a liability insurance policy does not change the liability of the institution, and holding that such a policy may be realized upon by the injured party; but concludes that such a policy constitutes some kind of an asset upon which such a person may realize and frankly states, l. c. 836: That the authorities holding that the procurement of indemnity or liability insurance does not impose any liability for tort where insured would not otherwise be liable, have no application under the theory of liability of charitable institutions recognized in the State of Colorado, and holds that there is a qualified liability in Colorado of charitable institutions where they have property or assets other than those impressed with the trust, such as an indemnity insurance policy.

We do not agree with the Supreme Courts of Colorado and Tennessee. By indirection they attempt to create liability by reason of the presence of insurance where no liability actually exists. In addition to this, our Supreme Court does not recognize the rule of qualified liability.

The order granting a new trial is affirmed. All concur.