JAMES J. DYCHE, Plaintiff-Respondent, v. WILLIAM B. BOSTIAN, Trustee in Bankruptcy for H. KELLEY, Doing Business as H. KELLEY & SONS, Defendant-Appellant, MASSACHUSETTS BONDING AND INSURANCE COMPANY, Defendant-Respondent, No. 42046— 233 S. W. (2d) 721.

Court en Banc, November 13, 1950.

W. F. Woodruff and Lucian Lane and Woodruff & Lane for appellant William B. Bostian, Trustee in Bankruptcy for H. Kelley, Doing Business as H. Kelley & Sons.

*R. Carter Tucker, John Murphy, William H. Wilson, J. Gordon Siddens* and *C. Thomas Carr* and *Tucker, Murphy, Wilson & Siddens* for respondent Massachusetts Bonding & Insurance Company.

*William C. Reynolds, Paul C. Sprinkle* and *Sprinkle, Knowles & Carter* for respondent.

[722] ELLISON, J.—This case comes to this court on transfer from the Kansas City Court of Appeals under Sec. 10, Art. V, Const. Mo. 1945, and our Rule 2.06. The principal and dissenting opinions in that court are reported in 299 SW. (2d) 25. Reference is made thereto for a fuller statement of the facts.

The plaintiff-respondent Dyche, an employee of one Kelley, a building contractor, was injured in falling from a house in course of construction. He filed a claim under the Workmen's Compensation Act, Sec. 3689 et seq., against his employer Kelley and the latter's insurance carrier, Massachusetts Bonding & Insurance Company. The referee awarded Dyche $1040.26 medical aid, and $20 per week for 60 weeks for permanent partial disability, against both the employer and the insurer.

The full Industrial Commission on a review at the instance of the insurer, made the same monetary award against the employer Kelley alone and exempted the insurer on the ground that its policy had been cancelled before the casualty. The circuit court on Kelley's appeal affirmed that award. Kelley then appealed to the Kansas City Court of Appeals, but thereafter was adjudged a bankrupt, and his trustee, Bostian, is now the record appellant. The insurance company is, of course, respondent. The majority opinion of the Court of Appeals reversed the judgment of the circuit court exempting the insurer, and remanded the cause to that court with directions to remand it to the Industrial Commission for further proceedings not inconsistent with the majority Appellate opinion.

The facts are as follows. The insurance policy here involved covering employer Kelley's liability was dated March 5, 1946, and was to run one year unless sooner cancelled. Plaintiff Dyche's injuries were suffered on November 7, 1946, well within that period. But the evidence below showed that on or about October 24, 1946, Kelley's wife, who was his office manager, wrote the insurer's local agent Altman in Kansas City requesting the cancellation of the policy (and one other) because the premiums were too heavy. The letter was not introduced in evidence and the record does not show its date. But Mr. Altman, to whom it was addressed, testified his office received it on October 25, 1946. Altman was averse to cancelling the policies and

126

on the same day telephoned Mrs. Kelley that he was going to withhold cancellation until she had talked to her husband. Having received no further advice from her he called her again four to seven days later and told her ''please let me know whether you want to cancel as the premium will continue to accrue.''

On a later date (not shown) Mr. Altman's bookkeeper informed him that either Mr. or Mrs. Kelley had called (by telephone?) stating that the policies should be cancelled. Altman thereupon directed that the policies be sent to the branch office in Kansas City for cancellation *as of* October 25, 1946, the date of receipt of Mrs. Kelley's letter. They were forwarded accompanied by a letter, on November 7, 1946, the date of plaintiff Dyche's injury. This forwarding letter was introduced in evidence. But it and the policies were not received at the branch office until the next day, November 8, as was shown by the receiving stamp placed thereon. And in addition to that Altman testified the return notice from the branch office to his local agency confirming the cancellation was dated sometime after November 8.

Mrs. Kelley's testimony corroborated much of the foregoing evidence as to the events transpiring and their sequence, but not their dates. However she did say that on the day after Dyche received his injuries (November 7), she called Mr. Altman, the local agent, inquiring if the policy had been sent in for cancellation. He called her later and told her it had been ''stopped'' at the branch office. And he sent her a form of report of the casualty which she filled out and returned to him.

There was one item of contradictory testimony coming from assistant manager Downey of the insurer's branch office. He testified the policies in question were received [723] by him with a letter from Mr. Altman's office on *October* 28, for cancellation effective October 25, at the request of the assured. And he said Mr. Packwood, manager of the branch office, had previously written Altman asking the latter to get Kelley, the insured, to comply with certain safety recommendations. But there were no physical evidences on the letter of October 28 that the policies had ever been attached to it, such as clip or staple marks. And Mr. Downey was unable to explain Mr. Altman's letter of November 7, admittedly received by him on November 8, returning the policies for cancellation. In fact he conceded that letter indicated Altman had been attempting between October 25 and November 7 to keep the policies in effect. So much for the evidence, except for a few facts to be stated later, and insofar as the reader may desire to consult the two opinions of the Court of Appeals.

As to the law. The principal opinion in the Court of Appeals points out that under Art. V, Sec. 22, Const. Mo. 1945, our courts, in reviewing the final decisions and findings of any constitutional or statutory administrative body which are judicial or semi-judicial,

shall have power to determine whether the same are authorized by law and supported by competent and substantial evidence on the whole record. And our decisions have held that the courts are authorized to determine whether the administrative tribunal "could have reasonably made its findings and reached its result, upon a consideration of all the evidence before it; and to set aside administrative decisions clearly contrary to the overwhelming weight of the evidence."[1]

■ There is a clear conflict in the testimony as to when the policy involved here (and also the other one) was cancelled. There is no room for doubt that Mrs. Kelley's letter so requesting was received by local agent Altman on October 25. And likewise it can scarcely be doubted that Altman held up the cancellation pending further consideration of the matter by the Kelleys, until November 7 when he wrote a letter to the branch office *enclosing* the policies and directing their cancellation as of October 25, that letter being received by the branch office on *November 8*. It was introduced at the hearing below and the file stamp showed that receiving date.

On the other hand assistant manager Downey testified he received on *October 28* a letter from Mr. Altman's office *enclosing* the policies and directing their cancellation as of October 25. That letter also was produced at the hearing below and the file mark showed it was received on October 28. When the witness Downey was confronted with the other letter dated November 7 and the November 8 receipt date stamped thereon he admitted he received it on that date, and conceded he couldn't explain the discrepancy between the two letters as to when the policies were returned. He further agreed the letter of November 7 "seemed to say" Altman had "been attempting to keep them (the two policies) in effect from October 25th up to November 7th," and wound up by stating "Our file is not complete about how that happened," and that, "I have no explanation and I will have to admit that it looks like some kind of a mix-up."

If there were any indication that either witness Altman or witness Downey was inclined to prevaricate the case would be more difficult. But evidently both were sincere. And since the local agent Altman had closer contact with the transaction, and Downey was a general agent dealing with it on a paper basis, along with many other matters, doubtless, it is probable that witness Altman's version is more nearly correct. There must be some *true* explanation. And this brings into consideration another fact. There was a clause in the policy providing: "This policy may be cancelled at any time by either of the parties upon written notice to the other party *stating when, not less [724] than ten days thereafter,* cancellation shall be effective. The

[1]Wood v. Wagner Elec. Corp. et al., 355 Mo. 670, 674(2), 197 SW. (2d) 647, 649(3); Seabaugh v. Garver Lbr. Co., 355 Mo. 1153, 1166(2), 200 SW. (2d) 55, 62(2); Henderson v. Laclede C. C. Products Co. (Mo. App.) 206 SW. (2d) 673, 675(2).

effective date of such cancellation shall then be the end of the policy period.'' (Italics ours)

There is no evidence that the letter written by Mrs. Kelley to Altman and received by him on October 25, specified any future date for the cancellation of the policies. Therefore under the above policy provision the policies could not have been cancelled sooner than 10 days after October 25, which would have been November 4 at the earliest. Upon receipt of Mrs. Kelley's letter Altman had telephoned her refusing to cancel the policies until she had consulted her husband. And at least four days later Altman telephoned her again concerning the cancellation of the policies, which would have made the earliest cancellation date November 8.

Furthermore, as the Court of Appeals opinion points out, assistant manager Downey testified that branch manager Packwood had written local agent Altman a letter (date not shown) asking that Kelley, the insured, comply with certain safety recommendations. And Altman's office returned the Packwood letter to the branch office where it was received October 28, with a written notation thereon ''Policy is being returned for cancellation.'' And at first Downey testified that the two insurance policies were returned with the Packwood letter. But later he admitted his records were incomplete and that it looked like ''some kind of a mix-up.'' And on the other hand Altman positively stated that the policies were returned with his letter of November 7, and it is undisputed that the branch office did receive that letter on November 8. This signifies the notation ''Policy is being returned for cancellation'' made by Altman's office on Packwood's letter returned to Packwood on October 28, meant the policy had been returned by Mrs. Kelley to *Altman* and that *he* retained it until he sent it to the branch office on November 7.

As to the law of the case, we think the ruling of the principal opinion of the Court of Appeals is correct, that an actual cancellation is necessary, as distinguished from a mere intention to cancel. [229 SW. (2d) l. c. 29 (5-7)]. It may be that by mutual agreement the parties could have waived the policy requirement of ten days' written notice and have cancelled it sooner while it remained a mere contingent executory contract. But they could not do that after the occurrence of the insured event had fastened liability on the insurer.

For the last sentence of Sec. 6009, R. S. 1939, Mo. R. S. A. (Sec. 5898, R. S. 1929) cited in the principal opinion of the Court of Appeals provides: ''No such contract of insurance (against loss on account of personal injury) shall be canceled or annulled by any agreement between the insurance company and the assured after the said assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void.'' (Parenthesis ours)

We think this statute means just what it says, namely that *no* such contract shall be cancelled by *any* agreement between the in-

surer and the assured *after* the assured has become responsible for the loss, and *any* such cancellation shall be void. The statute does not restrict its prohibition to cancellation agreements *made* after the occurrence of the insured event. Even though the agreement was made before that it is not binding unless the cancellation was completed before liability under the policy accrued. And Homan v. Employers Reinsurance Corp., 345 Mo. 650, 658(2), 136 SW. (2d) 289, 295(2), 127 A. L. R. 163, holds the statute constitutes a part of every such insurance contract as much as if fully set out therein.

. We further hold that the evidence here is strong enough to meet the requirements of the Wood, Seabaugh and Henderson cases, supra.[1]

The judgment of the circuit court affirming the award of the Industrial Commission is reversed, and the cause remanded to the circuit court for further proceedings not inconsistent herewith. All concur.