STATE ex rel. Oral H. McCUBBIN, as Personal Representative of Harry Robertson, Deceased, Relator,

v.

Honorable Charles E. GINN, Judge of the Circuit Court of Lawrence County, Missouri, Respondent.

No. 48447.

Supreme Court of Missouri,

En Banc.

May 8, 1961.

Rehearing Denied June 12, 1961.

Allen, Woolsey & Fisher, Harold J. Fisher, Russell G. Clark, Springfield, for relator.

Moore, Pettit & Steinle, Walter S. Pettit, Jr., J. Hal Moore, Aurora, for respondent.

IIOLLINGSWORTH, Judge.

This is an original proceeding to prohibit the respondent Charles E. Ginn, Judge of the Circuit Court of Lawrence County, Missouri, from assuming jurisdiction of an action, entitled "Leonard Housley and Frances Housley, plaintiffs, v. Oral H. Mc-Cubbin, as Personal Representative of Harry Robertson, Deceased, defendant," wherein plaintiffs seek damages for the alleged wrongful death of their minor daughter, Barbara Housley. The petition filed by Barbara's parents alleged that her death was caused by injuries sustained on the 9th day of August, 1959, when Harry Robertson, a resident of Kiowa County, Oklahoma, so negligently operated upon a public highway of Lawrence County, Missouri, his 1955 Chevrolet automobile, in which Barbara was a passenger, as to cause it to strike a bridge abutment and crash violently into a tree, whereby both she and Robertson were then and there killed.

Thereafter, on May 23, 1960, Barbara's parents filed in the County (Probate) Court of Kiowa County, Oklahoma, their petition for letters of administration upon the estate of Harry Robertson, in which they alleged, in substance, the facts set forth in their petition for damages and that Harry died intestate, leaving no assets in Kiowa County; that they were creditors of Harry's estate by reason of a right of action accruing to them for the wrongful death of Barbara; that it was necessary to procure the appointment of an administrator in Oklahoma upon whom service of process in said action could be had; and that the sole heir at law of Harry was his mother, Florence King, a resident of Mountain View, Kiowa County, Oklahoma. On the date set for hearing thereof, June 3, 1960, the County (Probate) Court found and ordered that jurisdiction of the estate of the decedent be refused for the reason that, although the petition for letters of administration was in proper form and decedent was a resident of Kiowa County at the time of his death, there were no assets to be administered upon in the State of Oklahoma, or elsewhere; and that the existence of a cause of action against decedent's estate, in which letters of administration were sought for the purpose of service upon the administrator so appointed, did not warrant appointment of an administrator under the provisions of Title 58, Oklahoma Statutes Annotated, Sections 122, 127 and 128.

On June 28, 1960, Mr. and Mrs. Housley, hereinafter called "plaintiffs", filed in the Probate Court of Lawrence County, Missouri, "In the Estate of Harry Robertson, Deceased, Application for the Appointment of a Personal Representative." It alleged: (1) the deaths of Barbara and Harry, caused in the manner aforesaid; (2) the findings of fact and order of the County (Probate) Court of Kiowa County, Oklahoma; and (3) the relationship of petitioners to Barbara and their right to maintain in Lawrence County an action for her wrongful death. The prayer was that the court enter its order appointing a personal representative of deceased Harry Robertson, under and pursuant to the provisions of § 537.020 RSMo 1949, as amended by the Laws of 1955, V.A.M.S. The application was sustained, in order "that said right of action may be secured and under the power vested in this Court by Section 537.020 RSMo 1949, as amended Laws, 1955, this Court does appoint Oral H. McCubbin as

the Personal Representative of the Estate of Harry Robertson, deceased."

Plaintiffs' petition for damages was thereupon filed in the circuit court and summons was served upon the defendant "as personal representative of Harry Robertson, deceased." Defendant (relator), limiting his appearance for the purpose of his motion, sought an order quashing the service on grounds that: (1) the probate court had no jurisdiction to appoint him as personal representative of deceased; (2) no cause of action existed against deceased which could be brought against defendant as the personal representative of deceased; and (3) the service attempted was violative of the due process clauses of the Constitutions of the United States and the State of Missouri.

The trial court overruled the motion and the defendant, as relator, instituted this proceeding. Following issuance of our provisional writ, respondent filed return in which he asserted jurisdiction of the cause and alleged that the sole purpose of relator in seeking to maintain this proceeding was to prevent the plaintiffs from recovering the proceeds of a policy of liability insurance covering Harry Robertson's liability to plaintiffs.

Relator insists that our provisional rule in prohibition should be made absolute for these reasons:

A. Inasmuch as Harry Robertson was a non-resident of Missouri at the time of his death and had no assets in Missouri, the Probate Court of Lawrence County was without jurisdiction to appoint relator as his "personal representative."

B. Service of process upon relator as "personal representative" of nonresident decedent Harry was invalid and violative of the due process clauses of the Fourteenth Amendment of the Constitution of the United States and Article I, Section 10, of the Constitution of Missouri, V.A.M.S., in that § 537.020 RSMo 1959, V.A.M.S., purportedly empowering the probate court to appoint such "personal representative," carried no provision for notice to his legal representative, heirs or next of kin.

C. Plaintiffs' petition reveals that no cause of action can be stated against relator because an action for wrongful death survives only against the *legal* representative and not against the *personal* representative of decedent Harry.

In support of his first contention, relator cites Article V, § 16, of the Constitution of Missouri which defines the jurisdiction granted to probate courts. We find nothing therein that denies those courts the power to appoint a representative to defend the estate of a deceased nonresident if, by statute not violative of other constitutional provisions, such power is given them. An article in 23 Mo.Law Review, pp. 113–156, seems clearly to demonstrate, loc. cit. 121, that "since 1822, probate jurisdiction has been regarded by bench and bar of this state as stemming from and dependent upon statutes, so long as such statutes relate to matters pertaining to the estates of decedents, minors or insane persons." The essential question is: Do the presently existing statutes of this state, if otherwise constitutional, vest the probate court with jurisdiction to appoint a representative of a nonresident decedent against whom, upon trial and proof of the grounds alleged in their petition, plaintiffs may recover a judgment enforceable against any asset or other property belonging to the estate of nonresident decedent Harry and found within this state?

In 1954, in the case of Harris v. Bates, 364 Mo. 1023, 270 S.W.2d 763, and in 1955, in the case of Crump v. Treadway, Mo., 276 S.W.2d 226, this court had occasion to discuss the then existing statutes pertinent to the question above posed and, in each of those cases, concluded that those statutes, as then written, did not authorize rendition of a judgment against a probate-court-appointed "personal representative" of a nonresident decedent. Relator now presses those cases upon us, but, in so doing, he not only overlooks important changes made by the Legislature in those statutes following

rendition of the opinions in the Harris and Crump cases, supra, but also overlooks far-reaching legislative changes made in the probate laws of this state, all of which, especially the latter, have a material bearing upon a proper determination of the merits of relator's contentions.

One change worthy of note is that made in § 506.210(1) RSMo 1949, V.A.M.S., which vests the courts of this state with jurisdiction of nonresidents operating motor vehicles over our highways. Originally, it did not, as we noted in the Harris case, even purport to subject to the jurisdiction of our courts the administrator, executor or other "legal representative" of a deceased nonresident motorist. To correct that omission, the Legislature, by Laws 1955, p. 310, § 1, (now § 506.210 RSMo 1959, V.A.M.S.), amended said section to vest our courts not only with jurisdiction of the nonresident motorist but to "his executor, administrator or other legal representative" in an action brought by either a resident or nonresident plaintiff.

Another change made after the Harris and Crump cases deals with defects in § 537.020 RSMo 1949, V.A.M.S. Paragraph 1 of that section originally provided, and the revision thereof continues to provide, for the survival of personal injury and wrongful death actions in favor of the *personal representative* of the injured party and against the person liable for such injuries *and his legal representatives.* Paragraph 2 thereof originally provided, and the revision thereof continues to provide, that the right of action for death or non-fatal injuries was sufficient to authorize and require the appointment of a *personal representative* by the probate court upon application of the beneficiaries of the deceased and the appointment of a *personal representative* for the person liable for such death or injury. However, paragraph 3 provided that where a nonresident negligently caused injury or death in this state, the probate court should have power to appoint a *representative* of deceased to sue or defend. After the Harris and Crump cases, in which it had been

pointed out that the *"representative"* authorized in paragraph 3 to be appointed by the probate court for the purpose of suing or defending could not be construed to constitute a "legal representative" (i. e., a duly appointed *executor or administrator*), as the term "legal representative" was used and intended in paragraph 1. In an effort to cure that defect, the Legislature, Laws 1955, p. 780, § 1, repealed paragraph 3 in its entirety. Unfortunately, however, the Legislature overlooked provisions containing the term "personal representative" in paragraph 2, and failed either to amend that paragraph by substituting the words "legal representative" in their stead or to enact a new paragraph 3 correcting the defects noted in the Harris and Crump cases. To that extent, ambiguity still exists in § 537.-020 RSMo 1959, V.A.M.S. We think, however, that ambiguity not too material here. We cite it primarily to demonstrate the persistent policy of the Legislature of this state to effectively subject nonresident motorists and their legal representatives to the jurisdiction of the courts of this state.

Bearing now in mind that § 537.020 RSMo 1959, V.A.M.S., although still ambiguous in the manner hereinabove stated, does, neverthless, definitely provide for the survival of actions for personal injuries or wrongful death against the *legal representatives* of all deceased persons; and bearing in mind that § 506.210 RSMo 1959, V.A.M.S., definitely extends the jurisdiction of our courts over nonresident operators of motor vehicles upon the highways of this state to their *executors, administrators and other legal representatives:* we turn to the provisions of the new probate code.

Relator, Citing §§ 481.020 and 466.010 RSMo 1949 (of the old probate code), insists that due to the fact that Harry was a nonresident of and had no assets in Missouri the probate court was without jurisdiction to appoint relator as Harry's "personal" (meaning "legal") representative. One of the difficulties with that contention is that both of these sections had been repealed and superceded by other statutes prior to the

time the cause of action here sought to be prohibited had arisen. Section 481.020 RSMo 1949 was superceded by § 472.020 RSMo 1959, V.A.M.S. The difference in those two sections is slight and need not be further considered. However, § 466.010 RSMo 1949 (dealing with nonresident decedents) was superceded by § 473.668 RSMo 1959, V.A.M.S. In fact, §§ 466.010–466.090 RSMo 1949, relating to nonresident decedents, were repealed by §§ 473.668 to 473.684 RSMo 1959, V.A.M.S. The latter sections present an entirely new concept of the function of the probate courts of this state with respect to administration of the estates of nonresident decedents from that which existed prior to their enactment. For instance, § 466.010 RSMo 1949 considered and declared the administration of property of nonresident decedents and found in this state to be ancillary and subservient to the domiciliary administration of the estate of the decedent. The new sections 473.668 to 473.684 RSMo 1959, V.A.M.S., however, are entirely different in concept. For illustration, § 473.668 provides:

"Administration proceedings and other procedures in this state with respect to property, tangible or intangible, of a nonresident decedent which is within the jurisdiction of this state are original proceedings or procedures conducted under the authority of this state solely, and are independent of and not ancillary to proceedings or procedures in any other state or country, and shall be had and conducted in this state as if the decedent were a resident, subject to and supplemented by the provisions in sections 473.671 to 473.694."

The full significance of that change does not become apparent until we consider the changes in concept of the restricted powers formerly vested in our probate courts with reference to the appointment and powers of domiciliary administrators. For illustration, the old code (§ 461.010 RSMo 1949) provided:

"Letters testamentary and of administration shall be granted in the county in which the mansion house or place of abode of the deceased is situated. If he had no mansion house or place of abode at the time of his death, and be possessed of lands, letters shall be granted in the county in which the land or the greater part thereof lies. If the deceased had no mansion house or place of abode, and was not possessed of lands, letters may be granted in the county in which he died, or where the greater part of his estate may be. If he died out of the state, leaving no mansion house, place of abode or lands in this state, such letters may be granted in any county."

That section, as relator contends, was generally considered to authorize the issuance of letters of administration only in the event of a showing of property within the state subject to administration. But it and several other complementary sections, to wit: 461.020 and 468.450 RSMo 1949, were repealed and supplanted by § 473.010 RSMo 1959, V.A.M.S. Note the portions of its pertinent provisions, especially those bearing our emphasis:

"1. The will of any decedent shall be probated and letters testamentary or of administration shall be granted:

"(1) In the county in which the domicile of the deceased is situated;

"(2) If he had no domicile in this state then in any county wherein he left any property; except that when the major part of a nonresident decedent's estate in this state consists of real estate, the will shall be probated and letters testamentary or of administration shall be granted in the county in which the real estate or the major part thereof is located;

"(3) *If the decedent had no domicile in this state and left no property therein, in any county in which the granting thereof is required in order to protect or secure any legal right.*

"2. If proceedings are commenced in more than one county, they shall be stayed except in the county where first commenced until final determination of venue in the

county where first commenced. The proceedings are deemed commenced by the filing of an application for letters; and the proceedings first legally commenced extends to all of the property of the estate in this state."

The Final Report of the Joint Probate Laws Revision Committee, filed in 1955, says that subparagraph (3) of paragraph 1 is a provision "inserted so as to permit administration on estate of decedent who had no property when necessary to enforce legal rights."

We are convinced that when § 473.-010 and § 473.668 RSMo 1959, V.A.M.S., are read in conjunction they clearly authorized the Probate Court of Lawrence County, upon application of the aforesaid resident plaintiffs of Missouri, to grant letters of administration upon the estate of the decedent Harry, to the end that plaintiffs could obtain service upon such administrator and, upon trial and establishment of the facts alleged in their petition, secure a judgment against decedent's legal representative and enforce it as against any property or other asset of the deceased within the jurisdiction of the state as though decedent had died a resident of the state.

It is true that the application filed by the plaintiffs in the probate court to appoint relator as the "personal representative" of the decedent was predicated upon the theory that the power of the court to act upon plaintiffs' application stemmed from and was based upon the provisions of paragraphs 1 and 2 of § 537.020 RSMo 1959, V.A.M.S. But we think it certain that both plaintiffs and the probate court believed that the term "personal representative", as used in paragraphs 1 and 2 of § 537.020, was intended by the Legislature to comprehend and embrace within its meaning the term "legal representative", as used in paragraph 1, and that relator's appointment as "personal representative" would and did constitute him the "legal representative" of decedent Harry, against whom a binding judgment could be had. It is also clear, as above shown, that, by virtue of the provisions of § 473.010 RSMo 1959, V.A.M.S., plaintiffs were as a matter of law entitled to have the court appoint and, upon their application, it became the duty of the court to appoint a legal representative of decedent Harry, to wit: an administrator; and that both plaintiffs and the court, although referring to relator as a "personal representative", considered and intended him to be the legal representative of decedent Harry. Under these circumstances, we think that, despite the errors in nomenclature and the misconception of the precise source of the power under which the appointment was sought and made, the order of the court yet must be held to have constituted relator administrator of decedent's estate, thereby rendering him amenable to plaintiffs' action. Consequently, the probate court, by entry *nunc pro tunc*, may correct its record specifically to recite the appointment of relator as administrator of decedent Harry's estate, whereupon plaintiffs' petition may also be amended to allege relator's appointment as such administrator in conformity with the *nunc pro tunc* entry of the probate court. See Eulinberg v. Quick Payment Old Line Life Ins. Co., Mo.App., 261 S.W. 725, 726 [3].

The conclusions herein reached also dispose of the further contentions made by relator herein.

The provisional rule in prohibition is discharged.

WESTHUES and DALTON, JJ., concur.

STORCKMAN, J., concurs in separate opinion filed.

HYDE, C. J., and EAGER and LEEDY, JJ., concur and concur in separate opinion of STORCKMAN, J.

STORCKMAN, Judge (concurring).

In concurring with the majority opinion, I wish to state and emphasize some additional matters.

■ Not only does § 537.020 RSMo 1959, V.A.M.S., provide for the survival of actions for personal injuries and wrongful death against the legal representatives of deceased persons, but it also authorizes and requires the probate court to appoint such a representative where the sole purpose is to prosecute a right of action for death or personal injury.

Subsection 2 of § 537.020 provides that: "The existence of the right of action for death or personal injury that does not result in death *shall be sufficient to authorize and to require* the appointment of a personal representative for the person liable for such death or injury by the probate court upon his death upon the written application of any person interested in such right of action for death or injury." Emphasis added. Upon proper application of any person interested in the right of action, the issuance of letters of administration is mandatory. The clear legislative intent is to provide an adversary party in an action for the recovery of a judgment which may be satisfied by means other than probate assets, such as the proceeds of liability insurance coverage which, initially at least, do not become a part of the general assets of a decedent's estate.

■ Where a casualty is covered by liability insurance, our statutes, § 379.195 and § 379.200, create a right on the part of the injured person which attaches as of the date of the occurrence and payment of the loss established does not depend upon satisfaction by the insured of the final judgment rendered against him. Homan v. Employers Reinsurance Corp., 345 Mo. 650, 136 S.W. 2d 289, 295, 127 A.L.R. 163; Dyche v. Bostian, 361 Mo. 122, 233 S.W.2d 721, 724; State ex rel. Anderson v. Dinwiddie, 359

Mo. 980, 224 S.W.2d 985, 987; Stedem v. Jewish Memorial Hospital Ass'n, 239 Mo. App. 38, 187 S.W.2d 469, 470–471.

■ Section 473.010 provides for the venue of the administration when the decedent had no domicile in the state and left no property therein. In such case letters may be granted in any county where required in order to protect or secure any legal right. The provisions of § 537.020 are consistent and in harmony with those of § 473.010.

■ Section 537.020 is also in pari materia with the provisions of the Probate Code relating to the administration of decedent estates. State ex rel. North St. Louis Trust Co. v. Stahlhuth, 362 Mo. 67, 239 S.W.2d 515, 518 [2]. These as well as other cognate statutes must be read together and administered and enforced as an entity. So viewed, § 537.020 is complemented by the general provisions of the Probate Code and cannot be said to be deficient with respect to the jurisdictional requirements of which complaint is made. The situation is somewhat analogous to that which authorizes a legal representative to sue for the sole benefit of heirs in a wrongful death action. Section 537.080(4).

■ As used in § 537.020, "personal representative" is synonymous with legal representative which is a generic term denoting an administrator or executor of a deceased person. As stated in Casey v. Hoover, 197 Mo. 62, 94 S.W. 982, 983, the term personal representative "means only executors and administrators, and therefore it should be so construed, unless there is something in the context that indicates that it was used with a wider meaning." See also Harris v. Bates, 364 Mo. 1023, 270 S.W.2d 763, 766 [5]; Oates v. Union Pacific Ry. Co., 104 Mo. 514, 16 S.W. 487; Wells v. Bente, 86 Mo.App. 264, 268; and Baldwin's Century Edition of Bouvier's Law Dictionary, Personal Representative and Legal Representatives.