Henry Lee **WICHMAN**, Plaintiff-Respondent,

v.

The **AETNA CASUALTY AND SURETY COMPANY**, a Corp., Defendant-Appellant.

No. 32471.

St. Louis Court of Appeals.

Missouri.

Feb. 21, 1967.

Smith & Colson, Farmington, for defendant-appellant.

Roberts & Roberts, Farmington, for plaintiff-respondent.

DOERNER, Commissioner.

The decisive question presented in this appeal is the nature and extent of the coverage of a policy of insurance issued by the defendant. Trial to the court without a jury resulted in a judgment for plaintiff for $2359.85, from which defendant perfected an appeal.

W–R Motors, Inc., a Missouri corporation, was organized to engage in the sale of automobiles at Festus, Missouri. It bought out a former dealer, a Mr. Smith, and became a franchised dealer for the sale of Mercury and Rambler cars. Prior to commencing business, in June, 1963, plaintiff Henry Lee Wichman, whose title was never stated but who apparently is the operating officer of W–R Motors, contacted Stan Klein regarding the purchase of insurance for the company. Klein, it was stipulated, was the agent and servant of the defendant, with the power to countersign and issue policies of insurance. Wichman testified that he told Klein he wanted "full coverage" for W–R Motors and for customers' cars left with it; and there was testimony by Wichman and Estol Lowe, one of the

company's salesmen, that when Klein delivered the policy on June 18, 1963, Klein stated that customers' cars were covered for any accident or damage while in the possession of W–R Motors or on its premises.

On December 14, 1963, while the policy of insurance was in force, W–R Motors sold a 1964 Mercury to Carmon A. Hill, and delivered the car to him, together with an application for a Missouri title and a bill of sale. Hill decided that he wanted power brakes installed, and either on the same day, or the next, returned his automobile to W–R Motors for that purpose. On the night of Friday, December 20, 1963, after W–R Motors had installed the power brakes but while it still had possession and control of Hill's Mercury, one of its employees parked it on the company's lot, adjacent to U.S. Highway 61–67. While so parked it was struck about 4:00 A.M. of the following morning by a car being operated by Gary Harbison, which ran off the highway.

At Wichman's direction, Patricia DeClue, W–R Motor's bookkeeper, telephoned Klein that morning and advised him of the occurrence. Klein told her, according to Miss DeClue, " * * * 'You're covered. I'll be right up and get all the details.' * * * " Klein arrived at the company's office and after looking over the situation again said there was coverage. Later that morning, Wichman related, Klein talked to him and said, "we were covered and that he would get an adjuster down."

About noon of that day Hill, unaware of the accident, came to W–R Motors to pick up his car. Wichman told Hill that he (personally) would replace his car, and a similar one was ordered and delivered to Hill on January 28, 1964. Wichman sold the damaged car to R. H. Counts and Sons Junk Yard for $2100. Before it was damaged the value of Hill's car (and presumably of its replacement) was $4559.85, which established the amount of loss as $2459.85.

Presumably defendant declined to pay under the policy, and Wichman then obtained from Hill a notarized instrument headed "Subrogation Agreement" by which Hill, in consideration of $4600, the receipt of which was acknowledged, sold, assigned, transferred and subrogated to Wichman all claims, choses of action, rights and causes of action which he had or might acquire against defendant Aetna, Gary Harbison, or anyone else, "arising out of an accident which occurred on or about December 21, 1963, on the lot of the Wichman-Knight Incorporated at Festus, Missouri, for the loss of a 1964 Mercury Parklane Two-Door Hardtop, serial No. 4Z63Z500108 and any other losses incurred by me." The agreement is dated April 21, 1964. Wichman testified that at the time he replaced Hill's automobile, Hill agreed to execute any agreements or papers necessary for Wichman to enforce his rights, and that he hadn't obtained the subrogation agreement before April because he was still in hopes that defendant would pay. On the same day that the agreement was executed counsel for Wichman on his behalf wrote defendant Aetna a letter in which it was stated that while Hill's car was in the custody of W–R Motors, Inc., a loss occurred, that because of defendant's refusal to pay the loss Wichman had personally been required to make the same good and had received an assignment from Hill of all of his rights under its policy as the owner of the lost property. Demand was made for payment of the loss. By a letter of April 28, 1964, defendant declined the demand, giving as its reason that there was no liability of its insured in the accident.

Wichman then instituted this action by filing a petition containing three counts. In his brief he describes them as " * * * Count I, to enforce a contract of collision insurance; Count II, to enforce an oral contract of collision insurance and, Count III, for detrimental reliance upon oral representations. * * * " The court rendered judgment in favor of plaintiff on Count I, but found against the plaintiff

and in favor of the defendant on Counts II and III. Since plaintiff did not appeal from the judgment against him on the latter two counts it became final, and we are not concerned with those counts in this appeal.

The controversy between the parties centers on a narrow issue. Plaintiff asserts that " * * * the insurance here was property damage insurance made for the benefit of W–R Motors' customers and was not liability insurance." Defendant maintains to the contrary, that the policy was one insuring only the legal liability of W–R Motors, Inc., and that it " * * * obligated defendant to pay only in the case where the named insured became legally obligated to pay. * * *" The contract is entitled "Garage Liability Policy," and is divided into sections. Section 1, in turn, is divided into three parts, which describe the insurance afforded. In Section 2, the declaration page, the named insured is stated to be W–R Motors, Inc., and the policy period to extend from June 18, 1963 to June 18, 1964. It is specified therein that "The insurance afforded is only with respect to such of the following coverages and hazards thereunder as are indicated by specific premium charge or charges." There then follows a schedule divided into columns headed "Coverages," "Limits of Liability," "Hazards," and "Advance Premiums." Since plaintiff contends that the insurance to which Hill was entitled was provided by Paragraph H of Part III, titled "Garagekeepers' Legal Liability," we may disregard all of the schedule except as to that part. It appears:

| Coverage | Limits of Liability | Hazard | Advance Premium |
|---|---|---|---|
| Part III—Garagekeepers' Legal Liability | | | |
| E. | | | |
| F. | | | |
| G. | | | |
| H. Collision or Upset | Coverage H—$100 deductible. Limit of Liability includes $5,000 limit for loss to property other than automobiles | | H$ 29. |

In Item 5 of the schedule the limit of liability under Paragraph H is stated to be $8,000.

Section 1 of the contract, as stated, is divided into three parts. The part on which plaintiff rests his claim is headed "Part III —Garagekeepers' Legal Liability," in bold face type, contains the subheadings, also in bold face type:

   "Coverage E—Fire and Explosion
   "Coverage F—Theft of the entire automobile
   "Coverage G—Riot, Civil Commotion, Malicious Mischief and Vandalism
   "Coverage H—Collision or Upset"

and then reads:

"The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

&mdash;

&mdash;

&mdash;

"H.   loss to an automobile or other property of a kind customarily left in charge of a garage caused by collision of the automobile or such property with another object or by upset thereof, but the deductible amount stated in the declarations as applicable hereto shall be deducted from the total amount of all sums which the Insured shall be-

come legally obligated to pay as damages because of each loss, and the limit of the Company's liability shall be the difference between such deductible amount and the limit of liability stated in the declarations;

occurring while such automobile or other property is in the custody of the Insured for safekeeping, storage, service or repair (1) at a location stated in this policy or while temporarily removed therefrom in the ordinary course of the Insured's business, or (2) away from the premises if the Insured is attending such automobile or property; and the Company shall have the right and duty to defend any suit against the Insured seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient."

Included in the policy is a statement of conditions. The fifth, here pertinent, provides:

"5. Action Against Company—Parts I and III—No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or his legal representative.

Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

"Part II—No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy nor until 30 days after proof of loss is filed and the amount of loss is determined as provided in this policy."

■ It must be borne in mind that in the only count involved in this appeal plaintiff sues as the assignee of Hill. His claim is that Hill, in whose shoes he stands, was a third-party beneficiary directly entitled to insurance by the terms of the policy, attached as an exhibit to plaintiff's petition. The only insured named in the policy is W–R Motors, Inc. Such a designation would not, however, preclude other persons or classes of persons, such as a customer of W–R Motors, from being covered if other portions of the contract of insurance so provided. Brugioni v. Maryland Casualty Co., Mo., 382 S.W.2d 707; Giokaris v. Kincaid, Mo., 331 S.W.2d 633, 86 A.L.R.2d 925.

■ The fatal weakness in plaintiff's claim, however, is that there is no other provision of the contract which directly afforded insurance to Hill for the damage to his car. While the word "collision" appears in the subheading under Part III, it is clear that so far as a customer of W–R Motors was concerned this was not a policy of "collision insurance" within the ordinary meaning of that term. 44 C.J.S. Insurance § 7, p. 476. Plaintiff cites 44 C.J.S. Insurance § 292 et seq., regarding various rules to be followed in the construction of contracts of insurance. But as that authority and our Missouri decisions point out, if the language employed in the policy is clear and unambiguous there is no occasion for construction, and it is the function of the court to give force and effect to the contract as it is written. 44 C.J.S. Insurance § 290, pp. 1139, 1140; Walker v. General American Life Ins. Co., Mo., 141 S.W.2d 785;

Swaringin v. Allstate Ins. Co., Mo.App., 399 S.W.2d 131. Plaintiff also emphasizes his instructions to Klein when the policy was ordered, and Klein's statements regarding the extent of the coverage at the time the contract was delivered. Whatever relevancy and materiality such evidence might have in another action, such as one for reformation, it is irrelevant to plaintiff's action under Count I in which he claims that Hill was insured by the terms of the policy as written.

In clear and unmistakable language the contract provides that the defendant will pay on behalf of the named insured, W–R Motors, all sums which the insured shall become legally obligated to pay on the risks enumerated; and that no action shall be maintained against it until the amount of the insured's obligation to pay shall have been finally determined, either by judgment against W–R Motors or by a written settlement agreed to by the defendant. In legal parlance it is a contract of indemnity against legal liability asserted against W–R Motors. Haines v. Harrison, 357 Mo. 956, 211 S.W.2d 489; Stedem v. Jewish Memorial Hospital Ass'n of Kansas City, 239 Mo. App. 38, 187 S.W.2d 469; Klotzbach v. Bull Dog Auto Fire Ins. Ass'n, Mo.App., 267 S.W. 39. No legal liability of W–R Motors to Hill for the damage to his car has been finally determined; in fact, so far as the record shows Hill never asserted a claim against W–R Motors. To sustain plaintiff's contention here it would be necessary for us to rewrite, by construction, the contract of insurance so that it would become a contract between W–R Motors and defendant for the benefit of Hill. Stedem v. Jewish Memorial Hospital Ass'n of Kansas City, supra. This we are without authority to do. State Mut. Life Assur. Co. of Worchester, Mass. v. Dischinger, Mo., 263 S.W.2d 394; Forir v. Toman, Mo., 202 S.W.2d 32; Prange v. International Life Ins. Co. of St. Louis, 329 Mo. 651, 46 S.W.2d 523.

Accordingly, the judgment is reversed and the cause is remanded with directions to enter judgment in favor of defendant and against plaintiff on Count I of plaintiff's petition.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment is reversed and cause remanded with directions to enter judgment in favor of defendant and against plaintiff on Count I of plaintiff's petition.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.