Margie McGARRAH, Plaintiff-Appellant,

v.

Gale Gene STOCKTON, Defendant,

State Farm Mutual Automobile Insurance Company, Garnishee-Respondent.

No. 8751.

Springfield Court of Appeals.

Missouri.

Feb. 8, 1968.

Edward V. Sweeney, Monett, Emory Melton, Cassville, for plaintiff-appellant.

Karl W. Blanchard, Blanchard & Van Fleet, Joplin, for garnishee-respondent.

TITUS, Judge.

A collision of automobiles on February 16, 1963, begot plaintiff an unsatisfied $100,000 default judgment against defendant in the Circuit Court of Barry County. To aid execution, plaintiff summoned State Farm Mutual Automobile Insurance Company as garnishee. The garnishment action was court tried and the facts were stipulated. Garnishee disclaimed liability because, as it asserts, the policy issued defendant was effectively cancelled for nonpayment of premium on February 9, 1963, or seven days before the accident occurred. The trial court agreed with garnishee and plaintiff appealed. The limit of garnishee's liability to defendant under the policy was "$10,000 for all damages arising out of bodily injury sustained by one person in any one accident." This also is the limit of garnishee's possible liability to plaintiff in garnishment, it constitutes the amount now in dispute and reposes appellate jurisdiction in this court. V.A.M.S. Const. art. V, §§ 3 and 13; V.A.M.S. § 477.-040; Meyers v. Smith, Mo., 375 S.W.2d 9, 15(5); Nye v. James, Mo.App., 373 S.W. 2d 655, 657(1).

The policy's "Declarations" provided "The policy period shall be as shown under 'Policy Period' and for such succeeding periods of six months each thereafter as the required renewal premium is paid by the insured on or before the expiration of the current policy period. The 'Policy Period' shall begin and end at 12:01 A.M. standard time. * * * The premium shown is for the policy period and coverages indicated on page 1." The stated premium was $52.10 and the "Policy Period" was for six months from November 23, 1962, to May 23, 1963.

After defendant had been continuously insured under the policy for sixty days, garnishee agreed "to continue such coverage in force until the expiration of the current policy period [but that] these agreements shall be void and of no effect: (a) if the premium for the policy is not paid when due." Garnishee could "cancel this policy

in accordance with the terms hereof by written notice, addressed to the named insured * * * stating when, not less than ten days thereafter, cancellation shall be effective * * * the effective date and hour of cancellation stated [in the notice] shall become the end of the policy period * * * If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter, but the payment or tender of unearned premiums is not a condition of cancellation."

When defendant executed the application for the policy he paid garnishee's agent the sum of $23.05. Both the application and the "Balance Due Statement" attached to the issued policy stipulated the $26.05 balance of the premium was due to be paid by January 23, 1963. Defendant did not pay or tender the balance due on January 23, 1963, or at any other time, and garnishee mailed him a "Cancellation Notice" on January 28, 1963, which advised that as "the full amount required to keep this policy in force" had not been received when due "this policy is cancelled, effective 12:01 A.M. Standard Time on * * * February 9, 1963." Defendant received the notice and does not complain of its form or timeliness in so far as the ten day policy requirement is concerned. Garnishee advised defendant on February 20, 1963, it was sending him, through its agent, a check for the unearned premium. The $4.06 check was mailed by the agent to the defendant but he refused to accept it.

Erudite counsel's ingenuity to concoct unique arguments supporting plaintiff's contention the policy was effective on the casualty date, was not, unfortunately, applied in any effort to comply with V.A. M.R. 83.05(a) (3) and (e). The lone "point" upon which plaintiff relies in her brief is "The Circuit Court erred in finding that the garnishee respondent had the right to cancel the policy of insurance prior to the date of loss and erred in holding that by making such cancellation garnishee re-

spondent is therefore not liable to plaintiff." The "point" does not undertake to relate, as required by the rule, "wherein and why" the trial court allegedly erred in finding garnishee could cancel the policy or to advise "why it is contended the Court was wrong" in adjudging garnishee not liable to plaintiff. Appellate courts have so often and so long forborne administering the coupe de grace to appeals for similar procedural faux pas, many appellants may now believe they have acquired, through immemorial disobedience without harm, a prescriptive right to breach the rule. Like restraint on our part in this cause should not be interpreted as condonation of the infraction but as a desire towards disposition of the case on its merits. V.A.M.R. 83.24.

Remembering the policy was cancelled under the provisions which permitted this to be done by garnishee "if the premium for the policy is not paid when due," and admitting defendant "purchased the policy for a policy period from November 23, 1962, to May 23, 1963," at the stated premium of $52.10, plaintiff acknowledges inability to find any authority favorable to and "squarely in point" with the theories she advances. By resorting to the "argument" portion of her brief, we find plaintiff initially contending the $26.05 paid by defendant when he signed the policy application amounted to a separate purchase of insurance coverage "for the three months period from November 23, 1962, to February 23, 1963," and the "balance due" defendant was to pay on January 23, 1963, represented a separate premium required to procure coverage for an additional and distinct three month period from February 23, 1963, to May 23, 1963. Having for her purposes thus bisected both the stated premium of $52.10 and the "Policy Period" designated in the insurance contract, plaintiff next insists garnishee could not effectively cancel the policy for the nonpayment of premium "when due" prior to the expiration of the first three months of the policy period because the premium for that term had been paid.

Plaintiff cedes that defendant's failure to pay the "balance due" on January 23, 1963, voided garnishee's agreement to keep the policy in effect for the six month period of the policy, but only permitted garnishee, upon proper notice, to effect cancellation on some date subsequent to the expiration of the initial three months of the policy period. Predicated upon her assumptions the $52.10 premium and the six month policy period designated in the contract could be divided into two equal parts and that a separate premium for the first separate half of the "Policy Period" had been paid, plaintiff additionally asserts (and this claim is not altogether clear to us) the policy is ambiguous because it does not specify when cancellation was to become effective if the balance due on January 23, 1963, was not paid.

A shortcoming in plaintiff's argument lies in the fact we are confronted with a written contract which stipulates one "Policy Period" for a designated single premium stated in one sum. The amount of the premium, the risk assumed by the insurer, and the duration of the assumption of that risk are correlated, inseparable from each other, and their union constitutes the essence of the agreement. It is essential the period of the risk or the terminus a quo and ad quem be agreed upon so the duration of the risk can be fixed or determined. The "Policy Period" and the amount of the premium may be ascertained only by reference to the insurance contract. 1 Couch on Insurance 2d, Section 2:5 and 2:8, pp. 107–108 and 110; 44 C.J.S. Insurance § 332, p. 1270. The agreement between defendant and garnishee used "Policy Period" in its singular grammatical sense "denoting only one" period and provided each succeeding policy period, if any, would be for a like term "of six months each." The word "period" with reference to time, refers "to a continuous period." Barrows v. Riss & Co., 238 Mo.App. 334, 179 S.W.2d 473, 475; 70 C.J.S., pp. 452–453. Thus the "Policy Period" contracted for was one undividable continuous period of six months duration

extending from November 23, 1962, to May 23, 1963. The premium was likewise agreed to be one stated sum in the amount of $52.-10. Although it was understood "the premium" could be paid in two installments, it nevertheless was required "the balance" necessary to pay the premium was due January 23, 1963. The consideration given for insurance for a specific term is not divisible although the premium is payable in installments. By employing the term "balance" it was clear the $26.05 due to be paid sixty days after the inception of the risk was in satisfaction of the single premium stated and not consideration for a separate three month term which would not commence until thirty days hence. The word "balance" is "never used to signify the whole of a thing * * * nor is it ever used to signify any precise quantity or definite proportion of a thing, and is as equally applicable to a small as to a large quantity or proportion." 8 C.J.S. p. 584. Contract provisions establishing the premium and the "Policy Period" could not be altered or divided by the unilateral desires or actions of the defendant without the assent of garnishee and we are unaware of any authority, under the guise of a distorted quantum valebat or quantum meruit action, which would vest an insured, a beneficiary or a judgment creditor with any interest in a portion of a stipulated policy period proportionate to the partial payment of a single premium an insured might have made. "The obligation to pay the premium when due is ordinarily an indivisible obligation to pay the entire premium, so that a forfeiture is not prevented by part payment thereof. This means that a part payment will not keep the policy in force for even such a proportionate part of the new period as the sum bears to the whole premium due." 6 Couch on Insurance 2d, Sec. 32:111, p. 331. "Partial payment, even when accepted as a partial payment, will not keep the policy alive even for such fractional part of the year as the part payment bears to the whole payment." Clifton v. Mutual Life Insurance Co. of New York, 168 N.C. 499, 84 S.E. 817, 818(1). Theories and arguments similar to those here presented by plaintiff were long ago rejected in Willcuts v. The Northwestern Mutual Life Insurance Company, 81 Ind. 300. Also see, 6 Appleman, Insurance Law & Practice, Sec. 8016, pp. 293–297.

Plaintiff refers us to MFA Mutual Insurance Co. v. Southwest Baptist Col., Inc., Mo., 381 S.W.2d 797, 801(2), which states that "Under the existing law a cancellation [of an insurance policy] by one party without the other's assent could not be accomplished except upon strict compliance with the conditions provided in the policy for cancellation." If we comprehend plaintiff's argument aright, she does not contend garnishee did not strictly follow the formalities for cancellation as prescribed in the policy. Rather plaintiff asseverates the sum defendant did pay was a payment pro tanto or a payment for so much of the policy period as $26.05 would buy on a pro rata basis and defendant had no authority to cancel for nonpayment of premium during that term. We have already expressed our opinion to be contra to this theory and rule there was a nonpayment of the premium when defendant failed to pay the balance thereon on January 23, 1963.

 Under the terms of the insurance contract in question, return of the unearned premium was not a condition precedent to cancellation but was a consequence of cancellation. Ireland v. Manufacturers and Merchants Indemnity Co., Mo.App., 298 S.W.2d 529, 533–534(5); Summers v. Travelers Insurance Co., 8 Cir., 109 F.2d 845, 847, 127 A.L.R. 1336(7). With monotonous regularity decided cases repeat the rule that ambiguous language in an insurance policy is to be construed liberally in favor of the insured and strictly against the insurer. But we detect no ambiguity in the cancellation provisions of the policy and like or similar provisions were held not to be ambiguous in Ford Motor Credit Co. v. Commonwealth Co. Mut. Ins. Co. (Tex.Civ. App.) 420 S.W.2d 732, 734, and Medford v. Pacific Nat. Fire Ins. Co., 189 Or. 617, 219 P.2d 142, 148, 16 A.L.R.2d 1181, rehearing

denied 222 P.2d 407. The cancellation provision is in the usual form. 7 Williston on Contracts, 3rd Ed. Sec. 920, p. 608. The policy clearly gave garnishee the right to cancel the policy if the premium was not paid when due by giving written notice "when, not less than ten days thereafter, cancellation" would be effective. This was done, and as the policy further provided the time and date stated in the notice would determine "the end of the policy period," ascertainment of when the cancellation would become effective is not difficult to come by. Without ambiguity there is no occasion for construction but only occasion to grant effect to the plain meaning and terms of the policy. Wichman v. Aetna Casualty and Surety Company, Mo.App., 412 S.W.2d 528, 532–533(3); Barrett Plaza, Inc. v. Northwestern Mutual Ins. Co., Mo. App., 411 S.W.2d 265, 267(2); Kisling v. MFA Mutual Insurance Company, Mo. App., 399 S.W.2d 245, 248(2). The premium was not paid when due, proper and timely notice was given as required by the contract, and the trial court was correct in finding the policy had been effectively cancelled before the collision occurred. Accordingly, the judgment appealed from is affirmed.

HOGAN, P. J., and STONE, J., concur.